[No. 4852.    Decided April 23, 1904.]

## GUY WARING, *Appellant,* v. J. A. LOOMIS *et al., Respondents.*[1]

CONTRACTS—CONSTRUCTION—AGREEMENT BETWEEN TENANTS IN COMMON.    Where L and W were in joint possession of government land, and enter into an agreement defining their interests as owners of undivided halves, and whereby L agrees to hold possession as trustee in the interest of both, paying certain rent, and agrees to pay W $214 "as his part of the expense of erecting the dwelling" thereon, the natural import of the language is that L was paying the sum mentioned as L's part of the cost, and not that he was buying W's half interest therein.

PUBLIC LANDS—POSSESSORY RIGHT OF SETTLERS AS CONSIDERATION FOR CONTRACT—SUFFICIENCY.    Parties who have entered upon government land in good faith with the intent to lawfully acquire title to the property at some future time, are not trespassers, and may contract with reference to their right of possession, which is a sufficient consideration for mutual agreements respecting the same.

SAME—CONTRACTS RESPECTING POSSESSION OF— DESCRIPTION OF UNSURVEYED LANDS—SUFFICIENCY.    A contract between parties in possession of unsurveyed public land sufficiently describes the premises, as between the parties, by referring to it as upon a certain creek and in their possession, where it was bounded by fences and the contour of certain bluffs, which formed a natural fence for a portion of the property.

PUBLIC LANDS—CONTRACT TO ACQUIRE TITLE FOR ANOTHER—VALIDITY—FRAUD ON GOVERNMENT—COMPLAINT SHOWING NO INTENT TO VIOLATE LAWS OF UNITED STATES,    A contract between parties in the possession of government land, referred to as a "ranch," whereby one was to obtain a patent, if possible, and hold a half interest in trust, is not necessarily void as a fraud upon the United States, since there are various ways in which title can be secured to government land, even if agricultural in character, not inconsistent with a contract of that kind, and the presumption is that a lawful way was contemplated, especially where the complaint on such contract alleges that there was no intent to acquire the land in violation of the laws of the United States.

[1]Reported in 76 Pac. 510.

Appeal from a judgment of the superior court for Spokane county, Belt, J., entered January 13, 1903, upon sustaining a demurrer to the complaint, dismissing an action to recover an interest in real estate.   Reversed.

*Graves & Graves,* for appellant.

*Merritt & Merritt,* for respondents, to the point that the parties were trespassers and there was no consideration for the contract, cited *Buxton v. Traver,* 130 U. S. 232, 9 Sup. Ct. 509, 32 L. Ed. 920; *Northern Pac. R. Co. v. McCormick,* 89 Fed. 659; 11 Rose's Notes, U. S. Rep. 735.

FULLERTON, C. J.—The appellant brought this action against the respondents to recover an undivided one-half interest in a certain tract of land situated on Sinlahekin creek, in Okanogan county.   A demurrer was interposed and sustained to his second amended complaint, whereupon he refused to plead further, and appeals from the judgment of dismissal, entered after his refusal to so plead.

In the complaint it is alleged, in substance, that about the 26th of May, 1885, the appellant settled upon the land in question, which was then unoccupied and unsurveyed government land, and continued in the sole possession and occupancy of the same until about the 6th day of October, 1886, when he sold an undivided one-half interest therein and the improvements thereon to one J. A. Loomis, and formed a copartnership with him to carry on a general merchandise store on the property; that appellant and Loomis occupied the premises jointly from that time until the 28th day of May, 1888; that the appellant on the last mentioned date became desirous of leaving the property; whereupon, to settle and fix their mutual rights in the property, he and Loomis entered into the following written agreement, viz.:

"Be it known by these presents, That we, J. A. Loomis of Sinlahekin ranch, near Sinlahekin creek, in the county of Okanogan, and territory of Washington, party of the first part, and Guy Waring, late of the same place, the party of the second part, being the undivided one-half owners of one hundred and sixty acres of land (subject to the paramount title of the United States), located upon Sinlahekin creek in said county of Okanogan, together with the improvements thereon, and having heretofore been in the joint occupancy thereof, and the said Waring being about to remove therefrom and to leave said Loomis in the sole use, occupation and possession of the same, have agreed and concluded concerning said land and ranch and improvements thereon as follows, viz.: (1) Loomis is to pay Waring in cash money upon the signing of this agreement the sum of two hundred and fourteen ($214.00) dollars as his part of the expense of erecting the dwelling house lately occupied by said Waring and his family on said ranch. (2) Loomis is to have the sole use, occupation and possession of said land, ranch and improvements thereon, upon the following terms, viz.: (a) He shall keep all boundary posts in position and in every lawful manner protect the exclusive possession thereof, and prevent said land from being jumped as unoccupied lands of the United States, and when the same are in the market, will apply for and obtain patent thereto if he can. (b) Loomis is to pay to Waring one-fifth in quantity and quality of hay raised on the ranch each year, delivered on said ranch, and shall have the privilege of buying the same from Waring for cash at any time before the end of the year in which the same was grown at the current price for hay of similar class and quality, on December 1st, of such year, and in any event, said Loomis shall take one-fifth of the hay at the end of the year in which it is grown, and pay Waring therefor in cash money the current price of hay of similar class and quality in that vicinity at the end of such year in which the same is grown. (c) Loomis is hereby authorized at any time to make a *bona fide* sale of said ranch, or any part thereof, for the mutual and equal benefit of both parties hereto, and to execute in Waring's name any

and all necessary conveyances thereof, and pay the proceeds of such sale one-half to himself and one-half, less 5 per cent commission, to Waring forthwith, provided that if Waring furnishes a purchaser for said ranch, Loomis shall not be entitled to retain any percentage as commission, but in all other respects this paragraph remains the same. (*d*) Loomis shall have no right to sublet or lease said land or any part thereof to any third person. (*e*) Loomis hereby acknowledges a trust in favor of said Waring for an undivided one-half interest in the whole of said land, and in the event of his obtaining the paramount title of the United States to said land in his own name, he hereby acknowledges an express trust to the extent of one undivided one-half thereof in favor of said Guy Waring for the faithful administration of which said express trust he hereby binds his heirs, executors and administrators to the same extent as himself. (*f*) Waring hereby warrants Loomis in the quiet and peaceable possession of said premises against his own acts and against any and all persons claiming by, through or under him. Witness our hands," etc.

It was further alleged that, although the tract was described as containing 160 acres of land, the exact quantity was not known, and was found afterwards to contain approximately 235 acres, but that it was, at the time the contract was entered into, marked and bounded by fences, buildings, and the contour of certain bluffs which formed a natural fence for a portion of the property, and that the property was generally known as the "Sinlahekin Ranch." It was further alleged, that, upon the execution of the contract above set out, the appellant moved from the property, leaving the said Loomis in the sole possession thereof, and that he continued in such sole possession until his insanity and death, which occurred since the commencement of this action; that said Loomis, at all times preceding his death, held the property under the contract mentioned, and, in express recognition thereof, paid the rent reserved therein; that between the 18th and 25th days

of September, 1891, Loomis located the land as quartz claims, under the mineral land laws of the United States, under various names and surveys, and filed the same for record, and that the government of the United States, on the 9th day of June, 1896, regularly issued patents for the same in the name of the respondent Bogart, but for the use and benefit of Loomis and the appellant; that it was not the intention of the parties to the contract, at any time, to procure, or attempt to procure, a patent to the lands mentioned, under the homestead or preemption laws of the United States, or in any unlawful way, but that the method adopted by Loomis was followed with the approval and consent of plaintiff, in order that a lawful title to the property might be obtained.

The complaint concludes with the official description of the property, as contained in the patents for the several mining claims, and with appropriate allegations showing the interests of the several defendants, averring that such interests were acquired subsequent to, and with knowledge of, the rights of the appellant.

The trial court sustained the demurrer, on the ground that the contract sued upon was void, and the respondents contend that the ruling was correct for three reasons: (1) that the contract was without consideration; (2) that the description of the property is ambiguous and uncertain; and (3) that the contract contemplated a fraud upon the government of the United States and is void as against public policy.

In support of the first contention, it is argued that the parties were mere trespassers on the land at the time of the execution of the contract, and consequently the appellant had no interest therein which he could sell to Loomis; that Loomis paid him in cash for all his interest in the improvements on the property at the time of the execution of the contract; and hence there was no consideration for

the contract, and the same was void as a *nudum pactum.*
But this contention is clearly untenable. In ·the first
place, the contract does not warrant the assertion that the
appellant was paid for all his interest in the improve-
ments at the time of the execution of the contract. The
natural import of the language used is that Loomis was
to pay Waring the sum mentioned as Loomis' part of the
cost of the dwelling house lately occupied by Waring,
not Waring's part of the cost, and this natural construction
coincides with the other conditions of the lease, which the
construction put upon it by the respondents does not. In
the second place, the parties were not trespassers on the
land. While the United States statutes declare it unlaw-
ful, in certain instances, to inclose parts of the public
domain, such statutes have no application when the in-
closure is made in good faith, with the intent lawfully to
acquire title to the property at some future time, under
the general laws of the government. While such occupa-
tion gives no right as against the government, the occu-
pants are not technically trespassers. No individual can
interfere with their possession or compel them to leave—
both the laws of the United States and of this state contain
provisions for the prevention of that—and such possessory
rights have always been recognized, not only among indi-
viduals, but by the courts, as of value and subjects of
barter and sale. *Lamb v. Davenport,* 18 Wall. 307, 21
L. Ed. 759; *Tarpey. v. Madsen,* 178 U. S. 215, 20 Sup.
Ct. 849, 44 L. Ed. 1042. There was, under any view
of the contract, a consideration sufficient to support it,
as between the parties and their privies.

The second objection is equally without merit. How
effective the description might be against an innocent
purchaser for value, having only constructive notice, it
is not necessary here to determine. But as between the
parties, the description is clearly sufficient.

The third objection can be sustained only on the assumption that the parties to the contract intended, at the time they entered into it, to obtain title to the land therein described in fraud of the United States. The contract, however, is far from declaring that such was their purpose. While it does refer to the land as a "ranch," and make provision concerning the payment of rent in hay, and provide that the vendee shall apply for and obtain patent thereto if he can, "when the same are in the market," yet these provisions are not necessarily inconsistent with an honest intent on the part of the parties. There are various ways by which title can be acquired to the public land of the United States, even though it be agricultural in character, only some of which are inconsistent with a contract of this kind. This being the case, it will not be presumed that the parties intended to violate the law. On the contrary, it is a rule of interpretation that, when a contract is open to two constructions, by one of which it would be lawful and the other unlawful, the former must be adopted.

Moreover, it is alleged in the complaint that the parties had no intent to acquire title to the land in a manner inconsistent with the terms of the contract, or in violation of the laws of the United States, and it is further alleged that they did not so acquire it. It would seem that this alone would be sufficient, as against the naked presumption that the parties might have had some other thought in mind, when they entered into the contract.

We conclude, therefore, that the contract is not void on its face and that the complaint states a cause of action. The judgment will be reversed, and the cause remanded, with instructions to reinstate the case, and to require the defendant to answer to the merits.

DUNBAR, ANDERS, and HADLEY, JJ., concur.