[No. 6939. Decided February 26, 1908.]

GUY WARING, *Appellant*, v. J. A. LOOMIS *et al.*, *Respondents.*[1]

CONTRACTS—VALIDITY—PUBLIC POLICY—PUBLIC LANDS—ACQUISITION. A contract whereby one of the joint occupants of public lands was given sole possession and agreed to acquire title from the government, acknowledging a trust in favor of the other for a one-half interest in the land after acquisition of title, will not be held to be void as contemplating the unlawful acquisition of the land under the homestead laws by fraud and perjury, where the title could be and subsequently was lawfully acquired under the mineral laws, and there was no clear and convincing evidence that a criminal act was intended in entering into the contract.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered December 8, 1906, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, dismissing an action to quiet title. Reversed.

*Graves, Kizer & Graves*, for appellant.

*Merritt, Oswald & Merritt*, for respondents.

ROOT, J.—Plaintiff brought this action to establish ownership to an undivided one-half interest in certain realty in Okanogan county. From a judgment dismissing the action, he appeals.

[1]Reported in 93 Pac. 1088.

In 1888, plaintiff, while in possession of the premises as unsurveyed government land, sold to one J. A. Loomis (since deceased) an undivided one-half interest in and to the improvements upon and rights in the land, and at the same time entered into a copartnership with said Loomis for the purpose of carrying on a general merchandise business. Subsequently the partnership was dissolved, and appellant removed from the land, leaving Loomis in possession under the contract hereinafter set forth. In 1891, Loomis located the land as quartz claims under the United States mineral land laws. In 1896, patents for such land were taken in the name of one Bogart, a brother-in-law of Loomis, he knowing of the contract between appellant and Loomis, and taking the patents as a convenience to the latter. Subsequently the lands were conveyed to respondent Calhoun, who took title with notice of appellant's rights. Appellant and Loomis, knowing or believing that any agreement between them as to the conveyance by one to the other of an interest in land held and to be acquired as a homestead by one of them would be illegal, consulted an attorney as to what they could do in order to make an equitable division of the property, or adjust matters so that Loomis could keep the property and appellant get the value of his equitable interest therein. Upon the advice of the attorney, appellant and Loomis entered into the following agreement, to wit:

"Be it known by these presents, that we, J. A. Loomis, of Sinlahekin Ranch, near Sinlahekin Creek, in the county of Okanogan and territory of Washington, party of the first part, and Guy Waring, late of the same place, party of the second part, being the undivided one-half owners of one hundred and sixty acres of land (subject to the paramount title of the United States), located upon Sinlahekin Creek in said county of Okanogan, and known as the Sinlahekin Ranch, together with the improvements thereon, and having heretofore been in the joint occupancy thereof, and the said Waring being about to remove therefrom and to leave said Loomis in the sole use, occupation and possession of the same, have

agreed and concluded concerning said land and ranch and improvements thereon as follows, viz: (1) Loomis is to pay Waring in cash money upon the signing of this agreement the sum of two hundred and fourteen ($214.00) dollars, as his part of the expense of erecting the dwelling house lately occupied by said Waring and his family on said ranch. (2) Loomis is to have the sole use, occupation, and possession of said land, ranch and improvements thereon, upon the following terms, viz: (a) He shall keep all boundary posts in position and in every lawful manner protect the exclusive possession thereof, and prevent said land from being jumped as unoccupied lands of the United States, and when the same are in market will apply for and obtain patent thereto if he can. (b) Loomis is to pay to Waring one-fifth in quantity and quality of hay raised on the ranch each year, delivered on said ranch, and shall have the privilege of buying the same from Waring for cash at any time before the end of the year in which the same was grown at the current price for hay of similar class and quality on December 1st, of such year, and in any event, said Loomis shall take said one-fifth of the hay at the end of the year in which it is grown, and pay Waring therefor in cash money the current price of hay of similar class and quality in that vicinity at the end of such year in which the same is grown. (c) Loomis is hereby authorized at any time to make a *bona fide* sale of said ranch or any part thereof for the mutual and equal benefit of both parties hereto, and to execute in Waring's name any and all necessary conveyances thereof, and pay the proceeds of such sale, one-half to himself and one-half, less 5 per cent. commission, to Waring forthwith, provided, that if Waring furnishes a purchaser for said ranch, Loomis shall not be entitled to retain any percentage as commission, but in all other respects this paragraph remains the same. (d) Loomis shall have no right to sublet or lease said land or any part thereof to any third person. (e) Loomis hereby acknowledges a trust in favor of said Waring for an undivided one-half interest in the whole of said land, and in the event of his obtaining the paramount title of the United States to said land in his own name he hereby acknowledges an express trust to the extent of one undivided one-half thereof in favor of Guy Waring for the faithful administration of which said express trust he hereby binds his

heirs, executors and administrators to the same extent as himself. (f) Waring hereby warrants Loomis in the quiet and peaceable possession of said premises against his own acts and against any and all persons claiming by, through or under him. Witness our hands and seals this 28th day of May, 1888, in duplicate.                    J. A. Loomis    (Seal)
                                          "Guy Waring    (Seal)"
"In presence of Thomas C. Griffiths.  A. Waltman.

To the amended complaint setting forth this contract, a demurrer was interposed by defendants and sustained by the trial court. Upon appeal this ruling of said court was reversed. *Waring v. Loomis*, 35 Wash. 85, 76 Pac. 510. The main contention was that the contract was void because it contemplated obtaining title to government land unlawfully. This court, declining to uphold this contention, said:

"There are various ways by which title can be acquired to the public land of the United States, even though it be agricultural in character, only some of which are inconsistent with a contract of this kind. This being the case, it will not be presumed that the parties intended to violate the law. On the contrary, it is a rule of interpretation that, when a contract is open to two constructions, by one of which it would be lawful and the other unlawful, the former must be adopted."

It is now urged that the purpose of the parties to this agreement, at the time of its making, was to acquire the property as a homestead by Loomis, which would necessarily involve fraud and perjury. It is conceded, however, that the title was afterwards obtained from the government honestly and according to law. It is evident that the ultimate purpose of the parties to the contract was to so arrange the matter that each should eventually receive a half interest in the land, or that Loomis should acquire the title thereto to be held subject to appellant's right to a half interest therein. This purpose could be attained by either of two methods—one lawful, the other unlawful. In the light of the agreement Loomis could not "prove up" upon the land as a homestead without committing perjury. But he could acquire title to the land,

or cause it to be acquired, from the government under the "mining laws," and do so legitimately. He did the latter, and no question is made as to the legality of this acquisition. Even if the original intention had been to secure title under the homestead law, we doubt if Loomis or his successors in interest could be heard to urge that fact as a defense at this time, inasmuch as such purpose was not carried out, but abandoned for one that was perfectly lawful. However, we do not think the evidence establishes an intention to acquire the property from the government in an unlawful manner. Both parties knew that the land could not be obtained under the homestead law without fraud and perjury. It was because of this that they consulted an attorney as to how they could arrange the matter. In the absence of clear and convincing evidence, it will not be presumed that the attorney drafted, and they, pursuant to his advice, executed a contract with the intention of carrying out its terms in a criminal manner when it was susceptible of a lawful performance. Under the pleadings and evidence, we think appellant is entitled to a decree awarding him an undivided one-half interest in and to the property in question.

The judgment and decree of the honorable superior court is reversed, and the cause remanded with instructions to enter a decree as above indicated, in appellant's favor.

HADLEY, C. J., FULLERTON, and CROW, JJ., concur.