IRELAND v. HENKLE, U. S. Marshal.

(Circuit Court, S. D. New York. July 30, 1910.)

1. PUBLIC LANDS (§ 135*)—COAL LANDS—RIGHTS OF ENTRYMEN.

Under Rev. St. §§ 2347-2351 (U. S. Comp. St. 1901, pp. 1440, 1441), authorizing individuals to enter 160 acres of vacant public coal lands, and associations to enter 320 acres, and prohibiting more than one entry by each person or association, one who has perfected an entry can sell or dispose of it as he pleases, and an individual or corporation can purchase as many entries made by others as he or it pleases, regardless of the entryman's intent to sell at the time of entry.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 351-362; Dec. Dig. § 135.*]

2. CRIMINAL LAW (§ 113*)—ACQUIRING PUBLIC COAL LANDS—PLACE OF OFFENSE.

Persons who had not been in Wyoming until after consummation of an alleged conspiracy to defraud the government by unlawfully obtaining public coal lands, and who had not been in direct or indirect communication with any one there, should not be removed to that state for trial on that charge, since any offense by them was committed elsewhere.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 232; Dec. Dig. § 113.*]

Petitions for habeas corpus and certiorari by Rufus J. Ireland, by Patrick T. Wells, by George W. Dally, and by Wilberforce Sully against William Henkle, United States Marshal. Writs sustained, and petitioners discharged.

The four petitioners were indicted in the district of Wyoming, May 21, 1909, for conspiracy, in violation of section 5440, Rev. St. U. S. (U. S. Comp. St. 1901, p. 3676), to defraud the United States by obtaining coal lands from the government in violation of law. Proceedings to remove the petitioners under section 1018 (page 719) were instituted. A hearing was had before a United States commissioner at which the government offered in evidence certified copies of the Wyoming indictment and bench warrant, and rested. Defendants offered testimony, which is quite voluminous. The commissioner held that there was probable cause to suppose that the four petitioners had committed the crime charged in the indictment, and committed them for removal to the district of Wyoming. The cause comes here upon writ of habeas corpus and certiorari. The petitioners are residents of this state.

Hawkins, Delafield & Longfellow, for petitioner.
Henry A. Wise, U. S. Atty., for respondent.

LACOMBE, Circuit Judge (after stating the facts as above). The sections of the United States Revised Statutes regulating entry of coal lands are 2347, 2348, 2349, 2350, 2351 (U. S. Comp. St. 1901, pp. 1440, 1441). They provide that any person above the age of 21 years, who is a citizen, or any association of persons severally qualified, shall have

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
179 F.—63

the right to enter any quantity of vacant coal lands of the United States, not exceeding 160 acres to such individual person or 320 acres to such association; also that there shall be only one entry by the same person or association of persons, and no association of persons, any member of which shall have taken the benefit of the sections allowing entry, either as an individual or as a member of any other association, shall enter or hold any other lands under the provisions thereof.

The indictment charges that petitioners, and certain other persons, did conspire on June 1, 1906, at Lander, in the district of Wyoming, with certain other persons (therein named), to defraud the United States by obtaining for a certain corporation, to be thereafter organized and called the Owl Creek Coal Company, the title to and possession and use of a large quantity of vacant coal lands of the United States in excess of the quantity of such lands which such corporation could lawfully obtain from the United States. It charges that the first overt act performed in pursuance of such conspiracy—then, of course, complete—was performed on June 4, 1906, at Amityville, in the state of New York. It consisted in the execution before a notary public of papers to secure entry. The Owl Creek Company was not then in existence, nor was it when the entries were perfected and paid for on June 22d. It was not incorporated till long afterwards, November 7, 1906.

I fail to find anything in the statute which precludes an entryman who has perfected his entry from selling it or giving it away to whom he pleases, or which precludes any individual or corporation from buying up as many entries actually made by others as he or it pleases. Nor does there seem to be anything in them which makes the present frame of mind of any person making entry of any importance. Why A. and B. and C. and the rest of the alphabet may not enter coal lands, in the hope and expectation that when their entries are made they may be able to find some one who will buy their holdings, consolidate the properties thus acquired, and open a mine to take out the coal, it is difficult to see. Nor is there anything in the statute which forbids any one from promising to buy such individual entries, or the entrymen from relying on such promise. If Congress meant to preclude mining except of independent 320-acre sections, it was easy for it to say so. The corporation not being in existence, the petitioners and the other entrymen could not be held to be merely its agents or dummies, and so within the provision of section 2350 (U. S. Comp. St. 1901, p. 1441).

It is not necessary, however, to decide this application on that ground. It is conceded that none of the petitioners, except Dally, had ever been in the state of Wyoming until after January 1, 1908, and the proof shows that Dally was never there until June 10, 1906, which was after the consummation of the alleged conspiracy, and the first overt act thereunder, which was at Amityville on June 4th. Moreover, it appears that none of the petitioners had ever corresponded, or been in communication, directly or indirectly, with any one in the state of Wyoming until after the period when the crime, if any, was consummated. This disposes of the suggestion made in Price v. Henkel, 216 U. S. 493, 30 Sup. Ct. 257, 54 L. Ed. ——, and cases there

cited. If there was any conspiracy in which these petitioners were engaged, that conspiracy was entered into in New York, and they should not be removed to Wyoming upon this record.

The writs of habeas corpus are sustained, and petitioners discharged, unless the government takes an appeal, in which case proper directions will be made for their appearance.