[No. 15546.    Department Two.    December 16, 1919.]

GEORGE WEIKEL et al., *Appellants*, v. SYRENUS A. DAVIS et al., *Respondents*.[1]

MORTGAGES (7)—DEBTS SECURED—LIEN WITHOUT PERSONAL OBLIGATION. A mortgage may be given to secure a lien upon real estate without any accompanying debt or personal obligation to pay, in view of Rem. Code, § 1117, which provides that, if there is no such agreement, the remedy shall be confined to the property.

CONTRACTS (22)—MORTGAGES (12-1)—CONSIDERATION. The withdrawal and relinquishment of conflicting claims to coal lands applied for under the land laws, is a sufficient consideration for an agreement to pay certain sums therefor, and for a mortgage on the lands after patent issued.

CONTRACTS (40, 41)—MINES AND MINERALS (3½)—PUBLIC POLICY —RESTRICTION ON CONVEYANCES. The only restriction upon the acquisition of Federal coal lands being the limitation that no one person shall obtain more than 160 acres and no association more than 320 acres, a contract for a relinquishment whereby the patentee agrees to mortgage the land acquired to secure the sum agreed upon as consideration for the relinquishment is not in violation of the act or against public policy.

[1]Reported in 186 Pac. 323.

Appeal from a judgment of the superior court for Lewis county, Reynolds, J., entered May 27, 1919, in favor of the defendants, dismissing an action to fore-close a mortgage, tried to the court. Reversed.

*Parker, La Berge & Parker* and *Gordon & Easterday,* for appellants.

*A. E. Rice* and *Hartman & Hartman,* for respondents.

BRIDGES, J. — This was a suit to foreclose a real estate mortgage. Long prior to the government survey thereof, the parties hereto entered upon and improved certain coal lands located in Lewis county, Washington. When the survey was made, the parties offered their filings. It was then discovered that the claims and filings of appellants seriously conflicted with those of respondents. The appellants made individual claims and filings, but respondents claimed and filed collectively and as an association, thereby, under the coal land laws, being entitled to 320 acres. When the United States land office at Vancouver, Washington, learned of the conflicting claims and filings, it fixed a time and place for hearing to determine the preference rights of the parties. Before any testimony was taken, a conference between the claimants resulted in the drawing up and execution of a written instrument, dated December 9, 1907, between all of the appellants on one side and all the respondents on the other side. This agreement especially recognized the conflict of claims and recited that it was entered into for the purpose of avoiding the uncertainties of litigation. By its terms the appellants, for the consideration hereinafter named, agreed to withdraw all of their claims to the lands, to relinquish their rights to the United States government, and do whatever they could,

in good faith, to assist the respondents, or their predecessors in interest, to obtain patent from the government. The agreed consideration to be received by the appellants was the sum of one thousand dollars, payable in cash; $600 of which was paid to the appellant Weikel, $200 to the appellant Albert A. Dennis, and $200 to the appellant Arthur U. Dennis. It was further provided that the appellants were to receive the further sum of $26,000, of which Weikel should receive $19,400, Albert A. Dennis $2,200, and Arthur U. Dennis $4,400. The contract further provided that, within twenty days after the issuance of the government patent, the respondents, or their successors in interest, should execute and deliver to appellants a first lien upon the lands so received by them, for the purpose of securing the payment of the aforesaid $26,000 and the accrued interest thereon, and that such instrument should distinctly state that the respondents should not be personally liable for the payment of the said moneys, or any part thereof, but that the property itself was to be pledged and held solely liable for the payment of the debt, and that, if the indebtedness was not paid on or before three years, or if certain interest and taxes were not promptly paid, the mortgage lien might be foreclosed. This instrument was duly filed for record in the office of the auditor of Lewis county on December 17, 1914.

Thereafter the appellants executed their release to the government, and still later the government issued patent to the respondents covering 320 acres of the land in dispute. Thereafter, and on March 27, 1917, respondents or their successors in interest, pursuant to their contract, made their mortgage to the appellants, which mortgage covered all of the lands to which respondents had received title from the government.

This mortgage was given to secure the payment of $27,000, as follows: To George Weikel, $20,145.93; to Albert U. Dennis, $4,569.33; and Arthur A. Dennis $2,284.74. The mortgage further provided that the mortgagors should pay all taxes before the same became delinquent, and should pay a certain interest on January 1, 1918. It was further provided that there should be no deficiency judgment against any of the mortgagors, but that the mortgagees must look exclusively to the land for reimbursement. In other respects the mortgage was in usual form. This mortgage was filed for record in the auditor's office of Lewis county on April 30, 1917. The mortgagors being in default, the appellants, as mortgagees, brought suit to foreclose their mortgage. The trial court refused to foreclose the mortgage and entered judgment dismissing the action. This appeal is from that judgment.

Section 2347 *et seq.*, of the United States Revised Statutes, regulate the entry and acquiring of coal lands. They provide that any person above the age of 21 years, who is a citizen, or any association of persons severally qualified, shall have the right to enter a quantity of vacant coal lands of the United States, not exceeding 160 acres to such individual person or 320 acres to such association; also that there shall be only one entry by the same person or association of persons, and no association of persons, any member of which shall have taken the benefits of the acts allowing entry either as an individual or as a member of any other association, shall enter or hold any other lands under the provisions thereof.

It is first contended by the respondents that the instrument of March 27, 1917, being the mortgage sought to be foreclosed, is, in fact and in law, not a mortgage, because there was no debt and because the

mortgagors at no time became personally liable. This position is untenable. It is not necessary that there should be a personal liability of the mortgagor in order for there to be a mortgage. It is a common practice in the state of Washington for mortgages to be drawn which specially provide that the mortgagee shall look exclusively to the mortgaged lands and that there shall be no personal liability of the mortgagor, and, so far as we are aware, it has never before been questioned that such instruments were mortgages. Our statutes recognize such mortgages. Section 1117, Rem. Code, provides that, "when there is no express agreement in the mortgage, nor any separate instrument given for the payment of the sum secured thereby, the remedy of the mortgagee shall be confined to the property mortgaged."

The law on this subject is plainly stated in the case of *Pioneer Gold Min. Co. v. Baker*, 23 Fed. 258, where it is said:

"A mortgage may be created as well without as with an accompanying personal obligation of the mortgagor to pay the debt secured, or attempted to be secured, thereby. In the one case the property alone is charged with the lien—is looked to solely by the mortgagee out of which to make his lien; in the other, he has the additional security of the personal obligation of the mortgagor. A debt chargeable only against certain property is, in effect, simply a debt with limited means of satisfaction or enforcement; the value of the property charged with the indebtedness is the measure of the security afforded."

To the same effect, see the following authorities: 19 R. C. L. 296; *Graham v. Stevens*, 34 Vt. 166, 80 Am. Dec. 675; *Campbell v. Dearborn*, 109 Mass. 130, 12 Am. Rep. 671; *Wing v. Cooper*, 37 Vt. 169; *Fisk v. Stewart*, 24 Minn. 97.

It is further contended by the respondents that the withdrawal by appellants of their claims to the lands in question and the relinquishment by them to the government is an insufficient consideration for either the original contract or the mortgage. We cannot agree with this contention. This court has held to the contrary. *Harris v. Johnson*, 75 Wash. 291, 134 Pac. 1048; *Waring v. Loomis*, 35 Wash. 85, 76 Pac. 510. The appellants released, and respondents received, valuable rights, and this was a valid and sufficient consideration.

The respondents further contend that the original contract and the mortgage are void because the same are in violation of the Federal coal lands act and against public policy. Practically the only limitation provided by the coal land act is that one person shall not obtain more than 160 acres, and an association of persons shall not obtain more than 320 acres. The Federal act with reference to acquiring homesteads provides that lands acquired under that act shall not become liable for the satisfaction of any debt contracted prior to the issuance of patent, and that the person acquiring the homestead must make affidavit that he is acquiring it for his personal use and benefit and not for the use and benefit of any other person, and has not made any contract for the conveyance thereof to any other person. It will be noticed that the coal land act does not contain any of these limitations and restrictions. Section 2289 *et seq.*, Revised Statutes of United States. In the case of *Ireland v. Henkle*, 179 Fed. 993, the court, in speaking of the coal land act, said:

"I fail to find anything in the statute which precludes an entryman who has perfected his entry from selling it or giving it away to whom he pleases, or which precludes any individual or corporation from

buying up as many entries actually made by others as he or it pleases. Nor does there seem to be anything in them which makes the present frame of mind of any person making entry of any importance. . . . Nor is there anything in the statute which forbids any one from promising to buy such individual entries, or the entryman from relying on such promise.''

The supreme court of the United States, in the case of *United States v. Colorado Anthracite Co.*, 225 U. S. 219, in discussing coal land entry, held that:

''. . . in the absence of evasions of restrictions as to quantity, there is no prohibition, express or implied, against an entry by a qualified person for the benefit of another person fully qualified to make the entry in his, or, if a corporation, in its, own name.'' [Syllabus.]

But it is contended by the respondents that the instrument sought to be foreclosed is, in fact, not a mortgage at all, but is in reality an agreement conceived in fraud, whereby respondents are to acquire these lands for the appellants, thus giving them more land than they could lawfully acquire under the coal land act; that the whole business was a conspiracy and fraud to defeat the government. This contention might be serious if the facts substantiated it, but there is nothing in the record to indicate that there was any such conspiracy or fraud; on the contrary, it shows that all of the parties were acting in the utmost good faith; that the appellants were waiving, in favor of the respondents, their rights to acquire what were then supposed to be valuable coal lands, and that they were willing to so waive for the consideration to be paid by the respondents. There certainly can be nothing illegal in this transaction, nor is it in any sense in violation of public policy. It has been time and again held under the Federal homestead laws, which, as pointed out, contain many restrictions which

are inapplicable to coal lands, that a mortgage given by one entering a homestead, but before final proof has been made, is a valid instrument. If such a mortgage is not in violation of the homestead act, it certainly will not be held to be in violation of the coal land act. See the following cases: *Weber v. Laidler,* 26 Wash. 144, 66 Pac. 400, 90 Am. St. 726; *Waring v. Loomis,* 35 Wash. 85, 76 Pac. 510; *Stark v. Morgan,* 73 Kan. 453, 85 Pac. 567, 6 L. R. A. (N. S.) 934; *Hafemann v. Gross,* 199 U. S. 342.

Respondents offered some testimony to the effect that some of them executed the mortgage without knowledge of its contents, and that it was procured by fraud. They do not press these points either in their brief or in the oral argument. We have carefully considered the record with reference thereto and do not find any merit therein.

The judgment of the lower court is reversed, and the case remanded with instructions to enter the usual decree of foreclosure in accordance with the provisions of the mortgage.

HOLCOMB, C. J., MOUNT, and TOLMAN, JJ., concur.