## LYLE *v.* PATTERSON.

### APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 167. Argued March 5, 1913.—Decided April 7, 1913.

*Quære,* whether the benefits of the act of March 3, 1887, providing for settlement of titles of purchasers in good faith from railroad companies not entitled to convey, are confined exclusively to those who purchased prior to that date.

One suing to make a patentee trustee for himself can only recover on the strength of his own equity and not on the defects in defendant's title.

A possessory title to lands of the public domain acquired in good faith from a railroad company afterwards held not to have earned the land, by a purchaser who cultivated and improved the property, is good as against all except the United States, and an attempted entry by another before the land is restored to the public domain and reopened for entry is a trespass and initiates no rights in the property.

Possession, not based on a legal right but secured by violence and maintained with force and arms, cannot furnish the basis of a right enforceable in law.

A preëmption right cannot be initiated without settlement, habitation and improvement, *Homer* v. *Wallace,* 97 U. S. 579, and the same rule

applies to a homestead entry. Neither right can be initiated when the land is in possession of another under color of title.

A naked unlawful trespass cannot initiate a right to any part of the public domain. *Swanson* v. *Sears*, 224 U. S. 182.

176 Fed. Rep. 909, affirmed.

BY the act of May 12, 1864, 13 Stat. 72, c. 84, Congress made a land grant to the State of Iowa to aid in the construction of a railroad from Sioux City to the Minnesota line—a distance of about 80 miles. It was provided that the road should be completed within ten years, but that as each ten miles was completed, a patent for one hundred sections should be issued by the Secretary of the Interior to the State, for the benefit of the company building the road. In 1866 the State passed an act under which the Sioux City and St. Paul Railroad was to receive the benefit of the Congressional land-grant. That company began construction in 1872. Several ten mile sections were completed. Patents were accordingly issued to the State and it, in turn, made a number of grants to the Railroad Company. But, because of a controversy as to what had been earned, the State of Iowa refused to convey to the Railroad Company those sections which contained the land involved in this controversy.

This particular tract was sold on May 12, 1887, by the Railroad Company to Pasco, who bought in good faith, believing that the company had earned the right to receive a title thereto. He paid part of the purchase price, promised to pay the balance in ten annual instalments, entered into possession and made valuable improvements. In 1889 he sold his interest to Patterson, who agreed to pay the balance of the purchase money due to the Railroad. Patterson, by himself and tenants, remained in possession until January, 1901. He then sold to Smith and the latter, in March, 1901, conveyed to Thomas Beacom. In May, 1901, the appellant, Lyle, claiming that he had a homestead right in the premises, brought

the present suit against Patterson, Smith and Thomas
Beacom to charge them as trustees holding title for his
use.

On the trial it appeared that in 1874, 56 miles of the rail-
road had been constructed, after which the company ceased
to build. The road not having been fully constructed
within ten years as required by Congress in the act of
1864, the State of Iowa refused to issue grants for land
claimed by the Railroad Company, and, by appropriate
legislation, the State resumed all the unearned land and
relinquished the same to the United States. In 1889 the
Government filed in the Circuit Court a bill against the
Sioux City and St. Paul Railroad Company asking the
court to quiet the title of the United States to land therein
described, included in which was the quarter-section sold,
in 1887, to Pasco. That suit resulted in a decree in favor
of the United States. It was affirmed October 21, 1895
(159 U. S. 349).

On October 22, 1895, the day following the decision
in favor of the Government and for the purpose of in-
itiating a homestead right, James Beacom entered upon
the land and in the afternoon of the same day Lyle did
likewise. He hauled a small hut upon the land, did a little
plowing, and slept on the place one or two nights. He
left, intending to return, but was prevented from doing
so by James Beacom, who, with a drawn pistol and threats
of violence, kept him from coming on the land. Subse-
quently, Lyle did reënter and remained until he was
again forced to leave.

On November 18, 1895, shortly after the decision that
the land did not belong to the railroad, but to the United
States, notice was given by the Department of the Interior
that all the land included in the decree would be restored
to the public domain and be subject to entry ninety days
after publication. Those having rights under the act of
1887, 24 Stat. 556, c. 376, were required to file their claims

within ninety days following. In February and again in March, 1896, Lyle made his homestead application, tendering the necessary fees. Similar applications were made by James Beacom, Hoffman and others. Patterson made his claim under the act of 1887. It was rejected on the ground that after the passage of that act, and with notice of the defective title, he had made a new contract with the Railroad Company as to what should be paid him in the event the Government succeeded in the suit. Hoffman was held to be entitled to the patent. On appeal that decision was reversed by the Commissioner of the Land Office, who ruled in favor of James Beacom. On a further appeal the Secretary of the Interior held that nothing had been done under the new contract to deprive Patterson of the priority given to good faith purchasers under the act of March 3, 1887, and a patent was accordingly issued to him on March 23, 1901. Thereupon Lyle, on May 24, 1901, brought this bill against Patterson, Smith and Thomas Beacom to cancel the patent, or to have the holders of the legal title decreed to hold the land in trust for him. The Circuit Court dismissed the bill, and the decree was affirmed (176 Fed. Rep. 909) by the Circuit Court of Appeals.

*Mr. Madison B. Davis* and *Mr. Alfred Pizey* for appellant submitted.

*Mr. George C. Scott*, with whom *Mr. W. D. Boies* and *Mr. William Milchrist* were on the brief, for appellees.

MR. JUSTICE LAMAR, after making the foregoing statement, delivered the opinion of the court.

The Sioux City and St. Paul Railroad, claiming to have earned the land under the act of May 12, 1864, 13 Stat. 72, c. 84, sold a quarter-section in 1887, to Pasco, who

bought in good faith believing that the company was entitled to a grant from the State. He conveyed his interest to Patterson, who pending the litigation between the United States and the Railroad Company, in reference to the land, made a contract as to the amount to be paid him in the event the company lost the suit. The Government prevailed and the land being specially valuable because of its having been cultivated and improved there was a race to acquire the preëmption right. Lyle and others, claiming to have entered into possession, made applications for a homestead. Patterson, relying on the rights of a good-faith purchaser under the act of March 3, 1887, filed his claim. After a lengthy contest in the Land Department he received a patent. Lyle insists that the action of the Secretary of the Interior was based upon a misconstruction of the law and that Patterson and his assignee should be decreed to hold the title in trust for Lyle as the first entryman.

In the lengthy briefs filed in this court various arguments are presented to show that the benefit of the act of March 3, 1887, 24 Stat. 556, was confined to those who bought before that date, and that Patterson's subsequent contract with the Railroad Company deprived him of the priority he otherwise might have had. It is not necessary to consider these contentions, for even if they were sound it could not avail Lyle in the present suit, since he can only recover on the strength of his equity and not on the defects in defendant's title.

When on October 22, 1895, he made the so-called entry and settlement, the quarter-section was not an open and unoccupied part of the public domain, but in the possession of Thomas Beacom, who had bought from those who, having acquired the property in good faith, cultivated the land and made valuable and permanent improvements thereon. This prior possessory title was good as against all except the United States, and Lyle's entry was

a trespass which neither gave nor initiated any right in the property. The fact that by the threats and violence of another trespasser, he was prevented from continuing his forcible entry and detainer, deprived him of no right in the land, though it does illustrate what would be the result if possession secured by violence and maintained with force and arms could furnish the basis of a right enforceable in law.

Such a claim, originating in trespass, cannot be recognized, for "to create a right of preëmption there must be settlement, inhabitation and improvement by the preemptor, conditions which cannot be met when land is in the possession of another." *Hosmer* v. *Wallace*, 97 U. S. 575, 579. This is equally true of the initiation of a homestead right by settlement. The land here had been cultivated and improved by those who were in possession under a purchase from the Railroad, the apparent owner of the equitable title. Lyle's entry, though made under a pretense of effecting a homestead settlement, was but a naked unlawful trespass which could not initiate a right. *Atherton* v. *Fowler*, 96 U. S. 513, 516; *Swanson* v. *Sears*, 224 U. S. 180, 182. He therefore had no standing in court, and the bill was properly dismissed.

*Decree affirmed.*