### BRADFORD v. DANIELSEN et al.
### No. A-4192.

District Court of Alaska. Third Division. Anchorage.
Nov. 6, 1947.

408

Clyde R. Ellis, Hellenthal & Hellenthal and Ralph H. Cottis, all of Anchorage, for plaintiff.

J. Gerald Williams, of Anchorage, for defendants Chris B. Danielsen and Panza T. Danielsen.

No attorney for defendant Murphy.

DIMOND, District Judge.

Plaintiff brought this action seeking an injunction to prevent the defendants from interfering with plaintiff's possession of a tract of public land, the title of which is in the

United States, situated on the shores of Bristol Bay, in the Third Division, Territory of Alaska. The tract of land fronts on the bay for a distance of about 31 feet and extends inland in a northerly direction approximately 125 feet, being 18 feet wide at the northerly inland end. At the present time the land is reserved and not open to entry and that has been its status, so far as shown by the evidence, for more than ten years past. The tract is bounded on its westerly side and its northerly end by land owned by the plaintiff, and on its easterly side by land embraced within U. S. Survey No. 2541, applied for by John W. Felder, but not patented.

· The tract may be roughly divided into two parts. The southerly or seaward portion extending inland for about 50 feet from the line of mean high tide, is covered with water at extreme high tide, and in case of storm is subject to erosion. The remaining northerly or inland portion of the tract, which is about 75 feet long, is not covered by water at any stage of the tide.

Some years ago the seaward end of the tract, between the lines of mean high tide and extreme high tide, was first in the possession of Peter Knudsen who had thereon two structures, one a fish rack and the other a fish cache. Claim was made to the tract at a later date by Adolph Osterhaus. The record shows that by quitclaim deed dated July 9, 1928, Peter Knudsen and his wife conveyed the tract to the plaintiff in this action and that by similar deed dated August 2, 1932, Osterhaus conveyed all of his right, title, claim and interest in the land to A. H. Bradford, former husband of the plaintiff, now deceased. Later plaintiff, by Bradford's will or by operation of law, took title to all of the Bradford property. So it would seem that the plaintiff and her predecessor in interest have twice purchased the southerly portion of the tract from successive claimants. But it must be understood that no claimant had or has title to the land and that such title has always been and is in the United States. That fact must have been known at all times to all concerned.

The northerly end of the tract lying above the highest of tides for many years past has been occupied by the plaintiff and used as a garden. In fact, some years ago the plaintiff built a fence along the entire easterly side of the northern area, perhaps to protect the garden from trespassers. As an inference from the testimony it appears that the plaintiff believed the entire tract to be included in the adjoining patented ground which she has owned for many years.

On October 16, 1945, the defendants Chris Danielsen and Panza T. Danielsen filed for record in the local Recorder's office a notice claiming the tract as a boat house site, although the description was erroneous and included some adjoining land owned by the plaintiff. So far as shown by the evidence, the recording of this notice was not brought to the attention of the plaintiff before May, 1946. Late in May, 1946, the plaintiff, in order to use the tract for other than garden purposes, partially removed her fence from the easterly side of the tract above the extreme high tide line by lowering the wires to the ground and removing several of the fence posts. Immediately thereafter, and on May 24, 1946, the defendants placed a small building, variously called an outhouse or a tool house, on the northeast corner of the tract, and posted a notice on the land claiming it, but the notice so posted again described the tract incorrectly and included adjoining land owned by the plaintiff. Later the defendant Chris B. Danielsen made application for entry of the tract in the United States Land Office, at Anchorage, Alaska, still using the same erroneous description thereof. Still later the defendant filed in the Land Office a correct description of the boundaries of the tract. Within a few hours after the defendants placed the outhouse or tool house on the land, the plaintiff restored her fence along the easterly side of the tract. Some time thereafter the fence was pushed or trampled down, presumably by the defendants.

The plaintiff has filed in the land office a protest against the entry of the tract by Danielsen, but no evidence was ad-

duced showing that the plaintiff had made application to enter the land under any law or for any purpose whatsoever. Indeed, any application for entry, including the one made by Danielsen, must be without avail unless and until the United States releases the land from its present reservation status.

From the evidence it appears that from and after the year 1940 the plaintiff has made no use whatever of the seaward end of the tract between the lines of mean high tide and extreme high tide. In her complaint the plaintiff still claims possession and to be entitled to possession of the entire tract under claim and color of title based upon the deeds from Knudsen and from Osterhaus, and upon claim of possession of the plaintiff under such alleged color and claim of title since 1928.

I find that the plaintiff has been in possession of the northerly end of the tract, the part used for a garden, continuously for many years past and that possession was entirely undisputed until the trespass by Danielsen in May 1946. I further find that since the year 1940 neither the plaintiff nor any one else known to the record in this case has been in possession of the southerly or seaward end of the tract between mean high tide and extreme high tide, except such possession as has been exercised by Danielsen since May, 1946, and that between the year 1940 and the present time the plaintiff has not been in possession of that part of the tract.

■■ This is and must be an action for possession only, because the title of the land is in the United States and only the United States Government through its proper officers can give title to any one; moreover, the law has reserved to the proper department of the United States sole and complete jurisdiction to determine questions of title, that is to say, who shall take title from the United States, with that procedure the Courts have no right to interfere, and the finding of the department or officer of the Government on the subject is unassailable in the Courts except for

fraud or mistake. Because the title is still in the United States, no question of absolute title can be involved in this action, nothing except such claim of title from a former possessor as may tend to show who has the rightful possession at the present time.

It is argued by the defendant that the Court is without jurisdiction to make any determination on the subject and has urged upon the Court the view that the action should be dismissed and the title and consequent right of possession be determined by the executive branch of the Government and in that connection has cited a number of authorities including the case of Tiernan v. Miller and Lieth, 69 Neb. 764, 96 N.W. 661. The opinion in the Tiernan case contains a universally correct statement of the law. But in that case it appears that the Government had already acted through its executive authority and that one or some of the claimants held duplicate receiver's receipts which the Court there held gave right of possession. No such corresponding situation exists in the instant case and, therefore, the Tiernan case, however correct in theory or in the statement of the principles of law, is helpful but may not control the decision in the case at bar.

The question here as in the Tiernan case is one of possession only and the right of possession. Fortunately our own Circuit Court of Appeals for the Ninth Circuit has announced the governing rule in the case of Arness v. Petersburg Packing Company, 260 F. 710, decided in the year 1919. Although the late Judge Morrow, then a member of the Court, dissented, the opinion of the Court stands as the law and has never been departed from in that Court. Moreover the principle therein announced was followed in the case of Patterson et al. v. Hamilton, 9 Cir., 1921, 274 F. 363, 5 Alaska Fed. 59, and that principle is that one in possession of public lands in Alaska, and making use of the same, can hold them against all adverse claimants except the United States itself even though the lands are of such status that under ordinary circumstances the Government

will never pass its title except possibly upon creation of the future state of Alaska. This principle applies logically with special force not only to lands available for entry but also to lands held in reserve by the United States which may be released from reserve by act of Congress or the executive authority.

While not directly in point, there are other judicial declarations on the subject some of which are controlling in nature and others deserving of high respect: Lyle v. Patterson, C.C., 160 F. 545; Id., 9 Cir., 176 F. 909; Id., 228 U. S. 211, 33 S.Ct. 480, 57 L.Ed 804; Denee v Ankeny, 246 U.S. 208, 214, 38 S.Ct. 226, 62 L.Ed. 669; Rourke v. McNally et al., 1893, 98 Cal. 291, 33 P. 62; Switzler v. Earnheart, 1911, 59 Or. 344, 117 P. 296, 297. The right of possession was discussed at length and decided in harmony with the views herein expressed by Judge Overfield in the case of Burr v. House et al., 3 Alaska 641, and by Judge Wickersham in the case of Heine v. Roth et al., 2 Alaska 416.

 Hence the decision would be a simple one except for another feature of the case. The plaintiff many years ago fenced in, partially or entirely, and has since held under fence, the northerly end of the tract extending approximately from the line of extreme high tide to its northerly boundary, an area approximately 75 feet long, 18 feet wide at the northerly end and 20 feet or more wide at the southerly end. This fence has evidently been built and maintained in violation of the act of February 25, 1885, 43 U.S.C.A. § 1061, forbidding the fencing of the public domain, Clemmons v. Gillette, 1905, 33 Mont. 321, 83 P. 879, 114 Am. St.Rep. 814. Such fencing cannot be justified upon the theory that placing the land within fence is part of the procedure for acquiring title or merely the anticipation of acquiring title to public lands which are open to entry and which the one fencing is eligible to enter, as illustrated in Waring v. Loomis, 1904, 35 Wash. 85, 76 P. 510 and Mc-

Allister v. Okanogan Co., 1909, 51 Wash. 647, 100 P. 146, 24 L.R.A.,N.S., 764.

The enclosure of the land by fence on the part of the plaintiff is a circumstance that may be considered as conceivably operating to bar plaintiff from the relief to which she is otherwise entitled because it appears that the land is of such status that neither defendant nor plaintiff may enter it at the present time. Despite the maxim that he who comes into equity must come with clean hands, denial of all relief to the plaintiff in this case because she built and maintained the fence would not be in harmony with the fundamental principles of justice.

The plaintiff has asked for damages, but those damages are almost entirely predicated upon the averments of the complaint in which the plaintiff alleges that she was at the time of the filing of the complaint, and for many years past had been, in possession of the property. At all stages of the litigation the plaintiff has insisted that she is in possession and has enjoyed such possession for more than seven years past. She asserts claim and color of title for at least that period. If plaintiff were not in actual possession, then the present action must be dismissed because in that event only an action in ejectment would lie in which either party would be entitled to trial by jury, Arness v. Petersburg Packing Co., supra, and so the Court must take at face value the averments of the complaint, sustained by the evidence, that the plaintiff is and has been in possession. Upon that theory the plaintiff's claim for damages is not supported by the law nor justified by the evidence. It is true that the testimony shows that the plaintiff has failed to use the property for certain purposes and that her non-use of the property for those purposes has caused her damage, but there is no sufficient showing that the plaintiff could not have made the use of the property which she contemplated had she really desired to do so. No damages arising from the trespass of May 24, 1946, have been proved. In any event, they would be in amount negligible.

The decision is that the defendant may be enjoined from invading or trespassing upon the tract of land heretofore in possession of the plaintiff, namely, that part heretofore used by the plaintiff as a garden and extending approximately from the line of extreme high tide to the northerly end of the tract; that as a condition of such injunction the plaintiff must first remove the fence or partial fence which encloses the property and thus avoid further violation of the Act of February 25, 1885, supra; that defendants be permitted to remove from said tract whatever lumber or structure they now have thereon; that the plea for injunction as to the seaward end of the tract between the lines of mean high tide and extreme high tide may not be granted by reason of failure of plaintiff to show possession of said tract in any fashion since the year 1940; that no damages be awarded to plaintiff, that each party hereto pay his or her own costs and that no attorney's fee be allowed to one party as against the other.