**UNITED STATES v. SCHAUB.**

No. 3174.

District Court, Alaska,
First Division. Juneau.
April 3, 1952.

P. J. Gilmore, Jr., U. S. Atty., Stanley D. Baskin, Asst. U. S. Atty., Juneau, Alaska, for plaintiff.

W. C. Stump, Ketchikan, Alaska, Donald McL. Davidson, Seattle, Wash., for defendant.

FOLTA, District Judge.

This controversy involves the validity of the defendant's location, under the mining laws, of a sand and gravel claim on June 21, 1951, upon a part of a tract of 37.5 acres of land on Whipple Creek in the Tongass National Forest, Alaska, which, on February 9, 1951 had been reserved by the Regional Forester for the use of the Bureau of Public Roads as a source of road building material, and on July 26, 1951 withdrawn from entry by the Secretary of the Interior, Public Land Order No. 734, 16 F.R. 7329. This tract is embraced within the exterior boundaries of a tract comprising 91.13 acres, which on September 11, 1940, was set aside as a public recreation site under 16 U.S.C.A. § 497 and the regulations made thereunder.

It appears that the plaintiff has used a part of the tract bordering on Whipple Creek as a source of gravel and sand since 1934 in connection with the construction and maintenance of forest highways, roads and trails; that it is now engaged in highway construction in the vicinity; that this is the only economically feasible source of road building material, and that as it is removed it is replenished by freshets. It further appears that the extent and character of the deposit of sand and gravel were ascertained only after considerable exploratory work, involving the construction of an access road 1400 ft. in length, the sinking of shafts, removal of the over-burden of trees, brush, windfalls and soil, which, in conjunction with the removal of sand and gravel, has resulted in a gravel pit of about 3 acres in area. A ramp, constructed in the pit to facilitate the loading of trucks, appears to be the only improvement worthy of note.

Upon making his location, defendant barricaded the access road and excluded the plaintiff from the pit.

Plaintiff contends that the location is invalid because there was no discovery of mineral; that the land was not open to entry or location under the mining laws;

that sand and gravel are not minerals within the purview of the mining laws; that the location was made by the defendant in bad faith for the purpose of appropriating the benefits of plaintiff's exploration, development and improvements, after learning of the highway construction program now in process of execution and that the invitation for bids for this construction specified the use of Whipple Creek gravel. Plaintiff further contends that the local statutory requirements governing the location and staking of mineral claims were not complied with in several particulars, and seeks injunctive and other relief.

The defendant, while admitting that the several administrative steps testified to have been taken, denies that they were of any effect so far as precluding entry and location under the mining laws, except the withdrawal order of July 26, 1951, which he contends came too late to affect the validity of his location.

From the uncontroverted facts in evidence, it is clear that the area embracing the pit and improvements could not lawfully be included in a mineral location even in absence of any withdrawal of the area. It was in the actual possession and use of the plaintiff. That such use was intermittent and, in some cases, through the instrumentality of its contractors, is of no importance. It was used to the extent required by the plaintiff in the discharge of its function of administering the Tongass National Forest, with special reference to the construction of highways, roads and trails. Not only was this use a matter of common knowledge, but the pit itself and the character of the improvements were such as to put any person on notice that it was in the actual use of another. Regardless of what more, if anything, might be required to be shown in support of the claim of a private individual, it must not be overlooked that the United States, as absolute owner of the land, is not required to show more than that its use has been commensurate with its obligations in the execution of its functions. When the defendant included the gravel pit in his location, the land was in the actual use and possession of the United States, which had made valuable and per-

manent improvements thereon and in connection therewith. Since it is well settled that even as between private individuals no right can be initiated to land in the actual possession of another, *a fortiori*, no such right can be initiated as against the owner in actual possession. Carr v. United States, 98 U.S. 433, 25 L.Ed. 209; Ritter v. Lynch, C.C., 123 F. 930, 933–935; Cosmos Exploration Co. v. Gray Eagle Oil Co., 9 Cir., 112 F. 4, 61 L.R.A. 230, affirmed 190 U.S. 301, 24 S.Ct. 860, 47 L.Ed. 1064; Lyle v. Patterson, 228 U.S. 211, 33 S.Ct. 480, 57 L. Ed. 804. Although the foregoing cases did not involve national forest lands, this distinction is not material here. By analogy it may logically be said that since the United States had already made an appropriation of the sand and gravel of Whipple Creek, the pit was not open to relocation by the defendant or any other person even in the absence of a special use permit or an order setting it aside. Gavigan v. Crary, 2 Alaska 370, 380; 5 L.D. 376.

So much for the gravel pit and access road, as distinguished from the remainder of the 37.5 acre tract over which the defendant's claim overlaps. Turning now to a consideration of the question as to the effect of the withdrawal of this tract, it is noted that the plaintiff relies principally on the special use permit issued February 9, 1951, by the Regional Forester to the Bureau of Public Roads, pursuant to Secs. 251.1 and 251.2, 36 C.F.R., which regulations were in turn promulgated under 48 U.S.C.A. § 341 and 23 U.S.C.A. § 18, the later of which authorizes the appropriation of any part of the public lands or reservations of the United States as a source of material for the construction or maintenance of forest roads and highways.

48 U.S.C.A. § 341 provides that:

"The Secretary of Agriculture, in conformity with regulations prescribed by him, may permit the use and occupancy of national-forest lands in Alaska for purposes of residence, recreation, public convenience, education, industry, agriculture, and commerce, not incompatible with the best use and management of the national forests, for such periods as may be warranted but not exceeding thirty years and of such areas as may be necessary but not exceeding eighty acres, and after such permits have been issued and so long as they continue in full force and effect the lands therein described shall not be subject to location, entry, or appropriation, under the public land laws or mining laws, or to disposition under the mineral leasing laws: * *."

■ Under the authority conferred thereby, the Secretary of Agriculture, by regulation, 36 C.F.R. 255, Secs. 251.1(b) and 251.2, authorized the issuance of special use permits by the Regional Forester upon delegation of such authority to him by the Chief Forester. Such delegation was proved, plaintiff's exhibit No. 2, and was exercised by the Regional Forester in issuing the special use permit of February 9, 1951, which, omitting the description provides that:

"The area of 37.5 acres immediately above the Whipple Creek Bridge taking in both banks of Whipple Creek described below and as shown on plat furnished by the Bureau of Public Roads is hereby reserved for the use of the Bureau of Public Roads as a source of road building material:"

This would appear to be sufficient, since such order need not be couched in any particular phraseology. United States v. Payne, D.C., 8 F. 883, 888; Wolsey v. Chapman, 101 U.S. 755, 770, 25 L.Ed. 915. Moreover, it does not appear that it is essential that such withdrawal be made a matter of public record even though the area withdrawn is a part of the public domain, as distinguished from a forest reservation, although it appears that it has been the practice to note such withdrawals of public lands on the records of the local and general land offices, apparently out of caution in anticipation of the extension of public land surveys to such areas. In this instance it appears that the withdrawal of February 9, 1951, was made a matter of record in the offices of the United States Forest Service in 'Juneau and Ketchikan and that such records were open to inspection by the public generally. I am of the opinion that this was a valid

withdrawal and that thereafter the land was no longer open to entry or location under the mining laws.

█ Defendant concedes that the order of the Secretary of the Interior of July 26, 1951, 16 F.R. 7329, would be effective if it had antedated defendant's location. The contention that it came too late to affect defendant's location, however, overlooks the doctrine of relation back. The case here under consideration is one in which there are two claimants to the same sand and gravel deposit, one of whom has attempted to appropriate it by a location made on June 21, 1951, under the mining laws, while the other between February 9 and March 8, 1951, requested its withdrawal for the use of the Bureau of Public Roads. This designation in itself would, in conjunction with concurrent use, appear to be a sufficient appropriation to segregate the area from the national forest land. At any rate, it would appear by analogy that the plaintiff acquired an inceptive right to the area for the purpose specified in the request for the withdrawal before the defendant acquired any right by virtue of his location. It is a well settled rule of law that the first in time is the first in right and hence, when the Secretary of the Interior withdrew the area on July 26, 1951, assuming his authority extends to the withdrawal of national forest lands, the United States became entitled to the exclusive use and possession of the tract and this right, under the doctrine referred to, related back to the time of the request of the Regional Forester, Knapp v. Alexander-Edgar Lumber Co., 237 U.S. 162, 35 S.Ct. 515, 59 L.Ed. 894, and cut off all intervening rights including any rights acquired by the defendant by virtue of his location.

From the foregoing, I conclude that there was an appropriation and withdrawal of this tract from entry and location under the mining laws, not only by actual use and occupation so far as the area embracing the pit and access road is concerned, but also by the formal act of the Regional Forester and that, therefore, the defendant's claim is invalid. U. S. v. Hammer, decided by the Register of the United States Land Office at Anchorage, Alaska, Contest No. 442, January 16, 1941, affirmed by the Commissioner of the General Land Office, May 6, 1941. Wilcox v. Jackson ex dem. McConnel, 13 Pet. 498, 10 L.Ed. 264; Lyders v. Ickes, 65 App.D.C. 379, 84 F.2d 232; Gavigan v. Crary, 2 Alaska 370; United States v. Mobley, D.C., 45 F.Supp. 407; Id., 46 F.Supp. 676.