**UNITED STATES ex rel. PUCKETT v. LINDEMUTH et al.**

No. A–6882.

District Court, Alaska.
Third Division, Anchorage.
Feb. 28, 1953.

622

Seaborn J. Buckalew, U. S. Atty., Anchorage, Alaska, for plaintiff.

McCutcheon & Nesbett, Anchorage, Alaska, for defendants.

DIMOND, District Judge.

This is a contest between the United States of America and the defendants to prevent the latter from removing gravel from certain lands located by the defendants as placer mining claims within an area near the City of Anchorage, Alaska, occupied and used as an airport. It is asserted by the plaintiff that the land embraced within the claims was not at the time of their location available to such location as placer mining claims because of prior reservation at first for townsite purposes and later for airport use.

By Executive Order 3672, dated May 8, 1922, the land was withdrawn from "settlement, location, sale, entry or other disposition and reserved for townsite purposes * * *". The validity of that withdrawal order is not here challenged. Some years later the local residents desired that the land be made available for an air-

port. In its location and topography it was at that time eminently suitable for airport purposes. In the meantime, Congress enacted a law approved May 24, 1928, 45 Stat. 728, 49 U.S.C.A. § 211 et seq., authorizing the lease of public lands for use as airports. Accordingly, by Executive Order No. 5806, dated February 25, 1932, the land was restored so that it might be available for use as an airport. The text of Executive Order No. 5806 is as follows:

"Executive Order
Partial Restoration of Public Land
for Airport
Alaska

Executive Order No. 3672, dated May 8, 1922, reserving certain land in Alaska for Town-site purposes, is hereby revoked, in so far as it applies to tract 32, containing 140.24 acres, shown on a supplemental plat of survey, Fourth Addition, Anchorage Town Site, township 13 north, range 3 west, Seward meridian, Alaska, accepted May 29, 1931.

Herbert Hoover
The White House,
February 25, 1932
(No. 5806)"

It will be noted that the title indicates the use to which the land was to be put when restored to public domain. Pursuant to the plan, the land was leased to the City of Anchorage for use as an airport for the term of 20 years commencing on May 5, 1932.

In the year 1951, and while the lease of the land to the City of Anchorage for the use as an airport was still in full force and effect, the defendants located the land as placer mining claims. So far as the record shows, the claims were staked out in the usual fashion and notices of location were recorded as required by local law. The only mineral discovery was that of gravel. Whether the discovery of gravel is sufficient to support a placer mining location under the law is still debatable. 2 Lindley on Mines, 3rd Ed., page 996. The Land Office in Zimmerman v. Brunson, 39 L.D. 310 (1910), has held that it is not, but the Supreme Court of Oregon, in Loney

v. Scott, 1910, 57 Or. 378, 112 P. 172, 32 L.R.A.,N.S., 466 has held that it is. The point was not determined in Judge Folta's opinion in United States v. Schaub, 1952, 13 Alaska 640, 103 F.Supp. 873. Similarly, the decision of that question is not necessary here because the issue may be more satisfactorily disposed of on other grounds.

The principal question is whether the land was open to location for placer mining purposes in 1951. In administrative proceedings had within the Department of the Interior, the Bureau of Land Management held that it was not and that decision was affirmed upon appeal by the Secretary in Opinion No. 26429 dated October 14, 1952. Whether or not the decision of the Secretary should be considered final and conclusive, Ickes v. Underwood, 78 U.S. App.D.C. 396, 141 F.2d 546, and see 1 Lindley, § 108, p. 188, the conclusion of the Department seems clearly correct. The owner of the land, the United States, under various acts of Congress through the Executive Department of the Government, first withdrew the land entirely from entry and later restored it for one purpose only, and that was to lease it for airport purposes. To attempt to use the land both for airport purposes and for the placer mining of gravel would be impossible. The mining of the claims for gravel would totally destroy possibility of use of the land as an airport and thus the will of the Government, duly and lawfully expressed and carried into action by an actual airport lease, would be defeated. Wide as are the rights or privileges given to citizens to locate and work public lands for the extraction of minerals, the law does not go so far as to warrant the doing of what the defendants are undertaking to do here. The mining locations so attempted to be made by the defendants are null and void.

This matter came before the Court on what is denominated a "motion for permanent injunction" but it is really a motion for summary judgment under the rules and was so treated by all of the parties. Therefore, a summary judgment may be entered herein, permanently enjoining and restraining the defendants and their agents, attorneys, servants and employees from remov-

ing gravel or other minerals located in the land in question and from doing any and every other act and thing contrary to the rights of the United States and the City of Anchorage, in and to said land.

## UNITED STATES v. STEPHENSON.
### No. 1491 Cr.

District Court, D. Alaska.
Second Division. Nome.
March 9, 1953.

624

James von der Heydt, U. S. Atty., Nome, Alaska, for plaintiff.

Quincy Benton, Nome, Alaska, and Ralph Moody, Anchorage, Alaska, for defendant.

COOPER, District Judge.

After a trial by jury, defendant was convicted of receiving stolen government property in violation of Title 18, Section 641, U.S.C.A.; at the conclusion of the government's case, defendant moved for a verdict of acquittal basing her motion primarily on the assertion that a witness for the government, Josephus Tester, was an accomplice, and that there had not been sufficient corroboration of his testimony. The Court denied the motion on the basis that under the facts as given, the witness could not be considered an accomplice. Defendant was also advised at that time that no accomplice instruction, under the facts as then existed, would be given unless defendant submitted authorities warranting a contrary view. At the conclusion of the trial, there was no renewal of the motion by defendant, nor was there any other motion or argument presented. Although afforded an opportunity to do so, the defendant neither tendered nor requested any desired instructions nor were any exceptions made to the instructions given by the Court. No motion for new trial was made, however defendant filed a notice of appeal, and without the formality of a written motion or application, now comes before the Court on an oral motion for the allowance of bail pending appeal under Rule

46(a)(2), Federal Rules of Criminal Procedure, 18 U.S.C.A. In contending that the case involves a substantial question which should be determined by the appellate court as provided by the foregoing rule, the defendant makes the following points:

1(a). One Josephus Tester, a witness for the government, was an accomplice and that the Court erred in not giving an instruction to the effect that such testimony should be viewed with distrust.

1(b). That the Court erred in not instructing the jury that the testimony of an accomplice, unless corroborated, is not sufficient to convict.

2. That the Court erred in not giving a directed verdict at the conclusion of the government's case for the reason that there was not sufficient identification of the corpus delicti, to-wit: coffee alleged to be government property and stolen from the government.

3. That certain members of the jury were disqualified to serve by virtue of lack of intelligence and knowledge of the English language.

■ The defendant relies most heavily upon points 1(a) and 1(b) above. I find little if any merit to the other contentions of defendant and it is not necessary to here consider them. The prevailing rule in both state and federal jurisdictions is that a thief is not an accomplice of one subsequently receiving the stolen goods, and vice versa, the receiver is not an accomplice of the thief. Leon v. State, 21 Ariz. 418, 189 P. 433, 9 A.L.R. 1397; Curley v. Automobile Finance Co., 343 Pa. 280, 23 A.2d 48, 136 A.L.R. 1087. Defendant concedes that this is the general rule, but contends that the facts in the instant case bring it within the many exceptions. In support of that contention, defendant cites the case of People v. Kupperschmidt, 237 N.Y. 463, 143 N.E. 256, annotated in 32 A.L.R. 447. It is true that in the latter case, the Court held that the receiver cannot take with guilty knowledge unless aided therein by the act of the thief in delivery of the goods, and that the thief is therefore an accomplice. It is apparent, however, that the

Court in applying that test adopted the minority rather than the majority rule. Defendant, in effect, then, is suggesting that the prevailing rule be rejected by this Court in favor of the minority rule followed in the Kupperschmidt case. This suggestion must be rejected.

■ The general test which has been applied in an imposing array of state and federal jurisdictions with reference to the point before us, is whether or not the witness could be successfully prosecuted and convicted of the same crime with which the defendant is charged. This rule has been established and followed in Diggs v. U. S., 9 Cir., 220 F. 545. Other jurisdictions have applied this test to the particular question of stealing and receiving stolen property. Weisberg v. U. S., 49 App.D.C. 28, 258 F. 284; U. S. ex rel. v. Mulligan, 2 Cir., 50 F.2d 687; Cartwright v. U. S., 5 Cir., 146 F.2d 133; Aaronson v. U. S., 4 Cir., 175 F.2d 41.

■ There are of course circumstances under which a receiver of stolen goods, by virtue of conduct in aiding and abetting the actual theft, could be guilty of a larceny of the property in question, and the converse would be true under similar circumstances wherein the thief could also be convicted of receiving. However in all such instances, it must be shown that a conspiracy existed between the parties or that at least there was a concert of action between the receiver and the thief to the extent that there was actual participation by both parties in the crime charged. Under Section 2, Title 18 U.S.C.A., defining principals, one court has gone so far as to hold that one might be rightfully convicted of both receiving and stealing the same property. Aaronson v. U. S., supra. Such cases, however, can be readily distinguished from the instant case.

The witness Tester testified substantially that he was a Basic Airman stationed at Nome Airfield Base, and whose duties were generally that of transporting food supplies from warehouses on the base to the mess hall, and in some instances to government ships anchored in the immediate vicinity.

He testified that he was acquainted with the defendant and had on several occasions been present in her place of business, which was a combination restaurant and bar, while wearing his uniform. That on the evening of the date in question, he approached the defendant asking her if she needed anything and was informed by her that she could use 400 pounds of coffee. Subsequently, on the same night, the witness, with a companion, without authority entered one of the warehouses on the Nome Airfield Base and removed ten pasteboard cartons each containing two 20 pound tins of coffee which they transported to a point near defendant's place of business, at which time, because of mechanical trouble with the government truck then being used, it was necessary for them to conceal the coffee in some nearby bushes. Later, during the same evening, they returned to defendant's place of business, borrowed her jeep, and completed the transportation of the coffee. Upon delivering the coffee, the defendant advised Tester that she did not have the previously agreed price of $300 and offered $200 instead, which the witness and his companion accepted. The defendant testified that she knew the witness but denied any knowledge whatsoever of the incident in question.

These are the facts upon which the defendant claims that the witness is an accomplice. Under such facts, applying the test laid down by the majority of both state and federal courts, it follows that Tester was not an accomplice of the defendant.

However, assuming that Tester could be considered an accomplice, did the Court err in not giving instructions on the matter? In Anderson v. U. S., 157 F.2d 429, the Ninth Circuit Court of Appeals held that in view of Section 58–5–1, A.C. L.A.1949, a cautionary instruction as to accomplice's testimony is mandatory, even though not requested. It is interesting to note, however, in that case there is no indication whatsoever that the Federal Rules of Criminal Procedure were brought to the attention of the Court. The decision was rendered in September of 1946. The Federal Rules of Criminal Procedure became effective in March of the same year. It is therefore quite probable that no suggestion was made by counsel as to the application of the new Rules. However, it is obvious that under the facts of that case, the lack of such an instruction was prejudicial error. Ordinarily, however, a defendant cannot be heard to complain of the omission to give instructions in the absence of a request unless such an omission is so seriously prejudicial as to deprive the accused of a fair trial. Cosenza v. U. S., 9 Cir., 195 F.2d 177; Wright v. U. S., 9 Cir., 92 F.2d 595; U. S. v. Ginsburg, 7 Cir., 96 F.2d 882; U. S. v. Capital Meats, Inc., 2 Cir., 166 F.2d 537; Macaboy v. U. S., 82 U.S.App.D.C. 53, 160 F.2d 279. It is pertinent here to call attention to the provisions of Rule 30, Federal Rules of Criminal Procedure, 18 U.S.C.A., with respect to instructions. It has been previously determined by the Third Judicial Division of this Court that the Federal Rules of Criminal Procedure provide a substantial method of procedure for all criminal cases in the federal courts and that all prior conflicting statutes, rules and decisions must give way. U. S. v. Landicho, D.C., 72 F.Supp. 425, 427. To hold otherwise would do violence to the very purpose underlying the adoption of the Rules, which is the uniformity of procedure in the federal courts. This principle is supported by a decision of the Circuit Court of Appeals for the Ninth Circuit in the case of Nordgren v. U. S., 181 F.2d 718. The application of the Alaskan statutes relative to accomplice testimony was brought to the attention of the court in the latter case. The basic principle upon which accomplice testimony has been held to require cautionary instructions and corroboration in some jurisdictions is the assumption that such accomplice usually has an incentive to testify falsely in order to benefit himself. This assumption obviously had merit in the Anderson case, supra. No such situation exists in the present case, nor did counsel for the defendant, either through cross-examination of the witness Tester or by argument, even suggest that the witness had any improper motive in testifying as he did. The Court gave full

instructions as to the credibility of witnesses and it can be assumed that this instruction was applied by the jury to the testimony of the witness Tester as well as to other witnesses. As to the contention relative to corroboration of the testimony of the witness Tester and the lack of instructions on that question, it is not difficult to find in the record substantial corroboration through circumstantial evidence which tended to connect the defendant with the commission of the crime charged as required by Section 66–13–59, A.C.L.A.1949.

 It is my conclusion, therefore, that the court did not err in the matters complained of by the defendant. However, it is another matter as to whether a substantial question exists which should be submitted to the appellate court for determination. A substantial question within the provision of Rule 46(a)(2) has been construed as any question which is fairly debatable. D'Aquino v. U. S., 9 Cir., 180 F.2d 271. That interpretation is controlling here and has been followed in the Third Judicial Division of the District Court of Alaska. U. S. v. Barbeau, D.C., 92 F.Supp. 196. Attention might also be directed to the case of Nordgren v. U. S., supra, in which case, 181 F.2d at page 721, 722, there appears a footnote containing the following comment by the court: "Sec. 66–13–59, A.C.L.A.1949: We think it unnecessary to consider whether this territorial statute governs in a prosecution for violation of an act of Congress." In view of that language, it is a fairly debatable question as to what decision the Circuit Court of Appeals would render under the circumstances of this particular case. It might be stated further that the appellate court has not as yet been called upon to determine the question as to whether or not a thief under the circumstances of this case may be considered an accomplice of the receiver. It cannot be concluded, therefore, that a substantial question does not exist.

The motion is granted, and the defendant may be admitted to bail in the sum of $3,500.

"There is created a court of record to be designated the 'District Court of Guam', and the judicial authority of Guam shall be vested in the District Court of Guam and in such court or courts as may have been or may hereafter be established by the laws of Guam. The District Court of Guam shall have, in all causes arising under the laws of the United States, the jurisdiction of a district court of the United States as such court is defined in section 451 of Title 28, and shall have original jurisdiction in all other causes in Guam, jurisdiction over which has not been transferred by the legislature to other court or courts established by it, and shall have such appellate jurisdiction as the legislature may determine. The jurisdiction of and the procedure in the courts of Guam other than the District Court of Guam shall be prescribed by the laws of Guam."