## Baum *versus* Tonkin.

110   569
134   606
110   569
155   270
110   569
190   338

1. A mortgage, unless it contains an express covenant to that effect, does not of itself import any personal liability for the money it secures.

2. Securities for the same debt may be cumulated; the taking of a mortgage does not necessarily operate as an extinguishment of the claim it secures.

3. A parol promise to pay the balance of purchase money due under articles of agreement, made at the time of the execution of a deed, is founded on a good consideration and will support a personal action for said debt.

4. In such an action, a mortgage given as security for said parol promise, is admissible in evidence as corroborative of the amount of the purchase money due at the time of its date, although a *sci. fa.* has been issued on the same and the property sold for a nominal consideration; the original articles of agreement to convey are also admissible for the purpose of showing the amount of the purchase money and the several payments thereon.

5. A variance between a writ and declaration cannot be taken advantage of after defendant has pleaded in bar.

October 15th, 1885.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Cambria county :* Of October and November Term 1885, No. 161.

This was, in the Court below, an action of debt by John B. Baum against Vincent Tonkin, to recover the balance of purchase-money of a tract of land in Cambria county.

On the trial, before JOHNSTON, P. J., the following facts appeared:   On May 24th, 1873, plaintiff agreed by articles of agreement to sell to defendant and R. C. McCurdy, who afterwards assigned his interest to Hipps & Lloyd, a tract of timber land situate in Susquehanna township, Cambria county.   The consideration was five thousand dollars : two thousand to be paid on the 1st of July, 1873 ; one thousand on the first of June, 1874, and the balance, two thousand, on the 1st of June, 1875, with a limitation as to the quantity of timber to be cut each year until the land was paid for in full, unless security for the payments was given.   The deed to be made at the last payment, with the same covenants for title which the plaintiff had received from the former owner.

Tonkin being anxious to cut timber in larger quantities, Baum on January 13th, 1875, before all the payments were made, executed the deed for this property; no purchase money was

paid at this time, but the previous payments and one payment made afterwards were receipted on the articles.

Subsequently, on August 19th, 1876, Baum met Tonkin and Lloyd, of the firm of Hipps & Lloyd, for the purpose of arranging a settlement of the balance of the purchase-money, when it was found that there was a balance of $2,375 due Baum. Of this sum Hipps & Lloyd agreed to pay, and did pay $1,075, and, as was alleged, Tonkin agreed to pay the balance, $1,300, and as security for the same executed to Baum a writing in the nature of a mortgage whereby he conveyed to Baum his undivided half in the said tract in consideration of $1,300.

This agreement contained the following stipulation : " This grant is intended as a security for the payment of one thousand three hundred —— dollars on the fifteenth day of July, one thousand eight hundred and seventy-seven, with interest thereon at the rate of six per cent. per annum, which if duly made will render this conveyance void, and if default shall be made in the payment of the principal or interest above mentioned, then the said party of the second part, his heirs or assigns are hereby authorized to sell the premises above granted, or so much thereof as will be necessary to satisfy the amount then due with the costs and expenses allowed by law." No bond or other instrument in writing accompanied this indenture.

Baum testified in clear and positive terms, that at the time the deed was delivered, Tonkin agreed to pay him the balance of the purchase money (one thousand three hundred dollars in one year, and which was Tonkin's share), and that afterwards Tonkin renewed this agreement in 1877, 1878, 1879 and in 1880, but none of these promises were in writing.

Baum subsequently issued a *scire facias* on this mortgage and obtained a judgment upon which Tonkin's interest in this land was levied upon and sold to Baum for a nominal consideration. It appeared that at this time Tonkin had removed most of the lumber from the land and that it was of little value.

On the trial plaintiff offered in evidence the above mentioned mortgage of August 19th, 1876, for the purpose of showing that on that day Tonkin admitted an indebtedness of $1,300, and a contract between the parties.

Objected to that the paper presented is in fact a mortgage, that it was so treated by the plaintiff in this case who entered the same of record as a mortgage on the 4th of March, 1881, that upon this mortgage judgment has already been obtained, and that it imposes no personal liability upon the defendant in this case and cannot be proceeded upon in an action of debt. Objection sustained. Exception. (Assignment of error.)

Plaintiff also offered the original articles for the sale of the

[Baum v. Tonkin.]

land, dated May 24th, 1873, between J. B. Baum, Vincent Tonkin and R. C. McCurdy, to be followed by evidence that R. C. McCurdy authorized the deed set forth in this agreement to be made to Hipps & Lloyd instead of to himself; this to be followed by evidence that when the deed was signed and acknowledged no money was paid, that on the day it was delivered Tonkin agreed to pay the balance due from him, $1,300, and that he has since, on several occasions renewed that promise and agreed to pay the sum of $1,300, the balance of the purchase money.

Objected to, because it is between parties other than the parties to this record; and because, even according to the testimony of the plaintiff, the agreement is merged in the deed which was made and delivered. Objection sustained. Exception. (Assignment of error.)

The court upon motion entered judgment of compulsory nonsuit, and subsequently refused to take off the same, filing the following opinion: "As to the facts we can find no authority for a recovery in a case like the present. The receipt on the deed is of no moment between strangers, and at most *prima facie* between the parties.

" Neither would the plea of the statute of limitations avail the defendant. McClurg *v.* Fryer, 3 Harris, 293, and other cases dispose of that question. But for the reasons we have endeavored to adduce, the rule to take off the nonsuit is refused."

Plaintiff then took this writ of error assigning for error the exclusion of the evidence as above, the entry of nonsuit and the refusal to take off the same.

*George M. Reade,* for plaintiff in error.—The case should have been submitted to the jury. Baum testified that at the time the deed was delivered, Tonkin agreed to pay the balance of the purchase money in one year. The Statute of Frauds does not require such an agreement to be in writing: Tripp *v.* Bishop, 6 P. F. S. 424; Lowry *v.* Mehaffy, 10 Watts 387; McAboy *v.* Johns, 20 P. F. S., 9; Miller *v.* Fichthorn, 7 Casey 253. The original agreement was evidence for the purpose for which it was offered: Batdorf *v.* Albert, 9 P. F. S. 59.

It is admitted that no implied promise arises upon which a mortgagor can be made personally responsible without express agreement to pay. But the paper bearing date August 19th, 1876, was not offered as the cause of action, nor as an obligation upon which the suit could be maintained, but merely to corroborate the evidence of the parol contract accompanying it. For this purpose it ought to have been admitted in evidence: Brown *v.* Dewey, 1 Sand. Ch. 73; Barton *v.* May, 3 Id.,

454; Burke *v.* Cruger, 58 Am. Dec. 102; Hersey *v.* Turbett, 3 Casey, 424; Bl'd'g Assn. *v.* Neill, 12 Norris, 322.

A variance between the writ and declaration must be taken advantage of by plea in abatement, if at all, and not on a writ of error: Springer *v.* The Commonwealth, 3 Pen. & Watts, 28; Slocum *v.* Slocum, 8 Watts 367, 371.

*John P. Linton* (*William H. Sechler*, with him) for defendant in error.—The nonsuit was ordered principally because, *under the pleadings*, the evidence was not sufficient to submit to the jury. The mortgage, offered in evidence, was insufficient to sustain the action: Fidelity Trust Co. *v.* Miller, 8 Nor., 26.

It is even doubtful where the mortgagee forecloses his mortgage and enters into possession of the mortgaged premises whether he could then enforce a personal liability for the mortgage debt: Dollar Savings Bank *v.* Burns, 6 Norris, 491.

The record showed that a *sci. fa.* had issued on this mortgage, that a judgment had been obtained upon it, a *levari facias* issued, and property sold to plaintiff. Its functions were exhausted. It could not be made the foundation of another claim, nor was it proper evidence to sustain one.

Mr. Justice CLARK delivered the opinion of the court, November 9th, 1885.

This is an action of debt, brought by John B. Baum, against Vincent Tonkin, to recover the balance of purchase money of a tract of land in Cambria County. The deed was delivered to Tonkin on the 19th August 1876, and at the same time Tonkin delivered to Baum a writing in the nature of a mortgage upon the lands conveyed, securing the payment of the unpaid purchase money.

It is well settled, that a mortgage, unless it contain some express covenant to that effect, is not of itself an instrument which imports any personal liability for the money it secures. The mortgage in this case contains no such covenant, nor is it accompanied by any bond or other written obligation, evidencing any personal liability of Tonkin. After a formal conveyance of the land by Tonkin to Baum, upon a consideration of $1,300, it provides as follows:

" This grant is intended as a security for the payment of one thousand three hundred dollars on the fifteenth day of July, one thousand eight hundred and seventy seven, with interest thereon at the rate of six per cent per annum, which if duly made, will render this conveyance void, and if default shall be made in the payment," etc.

It will be observed, that there is in this mortgage, not only

no express covenant to pay, there is not even an acknowledgment of a debt, as for money borrowed, or for purchase money of land, or otherwise; it was given as a mere security; no personal contract or liability can possibly be implied in law from it, as the foundation of this action. The law, as to this, is well stated by Mr. Justice SERGEANT in Scott v. Fields, 7 Watts, 360, as follows:—" The authorities and the reason of the thing seem to show, that a mortgage is not of itself an instrument by which a personal liability for the money is raised, and on which an action of debt or covenant can be maintained by the mortgagee against the mortgagor, but that his remedy on such mortgage, is confined to the land itself which is put in pledge; yet, if there be any prior or accompanying cause of action, which of itself creates a personal liability, distinct from the mortgage, such as a loan, or bond, a note or other claim, the mortgage is not to be considered as merging such claim or demand, but is merely a collateral security. Mortgages, in this state, are usually accompanied by a bond and warrant of attorney, etc. Sometimes they are given to secure notes, or other instruments, sometimes to secure warrants of indemnity, and sometimes in the naked, simple form of a mere mortgage, given for the purpose perhaps of securing the debt of a third person, and when they are given in any of these modes it has never been supposed, that an action of debt or covenant for the money will lie upon the mortgage itself, but the remedy of the party upon the mortgage is against the land, and the land only."

The plaintiff, in this instance, availed himself of his remedy upon the mortgage; he sued out a *scire facias*, obtained judgment, and upon a *levari facias*, sold the mortgaged premises for $100, which amount is credited on his claim; this sum, being greatly less than the amount of the debt, can only be deemed as payment thereof *pro tanto*: Pierce v. Potter, 7 W. 475. The mortgage, therefore, as such, is discharged; and as it contains no express covenant upon the part of Tonkin to pay the balance of the debt, and no contract to that effect can be implied from it, the action, so far as it is founded on the mortgage, must fall.

But the taking of a simple mortgage, as we have already said, does not necessarily operate as an extinguishment of the claim it secures; securities may be cumulated for the same debt; a personal bond or promise may be given in connection with the mortgage, the personal obligation as representing the debt, being the principal, and the mortgage incident or accessory to it: Clarke v. Stanley, 10 Barr, 479.

The first count in the declaration is founded in an indebtedness, apart from the mortgage; it is for the purchase money of

the land, which it is now alleged the defendant, at the delivery of the deed and of the mortgage, expressly agreed and personally bound himself to pay. The execution and delivery of the deed, operating as a merger and extinguishment of the original articles, was certainly a sufficient consideration for such a promise, if any was made, and it is not requisite that the engagement should be in writing: Tripp *v.* Bishop, 6 P. F. S. 424. The demands of the statute of frauds were fully satisfied in the delivery of the deed, and a cotemporaneous verbal promise to pay the purchase money would be founded in a sufficient consideration, and would be enforceable in law, either in assumpsit or debt. The acknowledgment in the body of the deed, and in the appended receipt, were as between the parties *prima facie* evidence only of payment; it was competent for the plaintiff to show as against these that a portion of the purchase money in fact remained unpaid: Hamilton *v.* McGuire, 3 S. & R. 355; Redfield Mf'g Co. *v* Dysart, 12 P. F. S. 62.

John B. Baum testifies, that the deed was delivered on the 19th August, 1876; that on that day he met Tonkin at the Cherrytree, and they there ascertained the amount Tonkin owed on the purchase money of the land; that Hipps and Lloyd were indebted to him at that time on their interest or share $1,075, and that Tonkin owed him on his part $1,300. The witness further says: "Tonkin gave me a proposed mortgage for a certain amount, *with the agreement*, that he was to pay me $1,300, as soon as he cut the timber; he pledged me likewise that I would not sell that paper, that he would pay the money as soon as it was due," etc. He further says, that he took the mortgage from Tonkin on the promise that he would pay him the $1,300.

With the truth or falsity of these statements, of course, we have nothing to do; when the case is developed on both sides a different state of affairs may appear, but upon this testimony the cause should have been submitted to the jury.

In the trial of this issue, the mortgage was clearly admissible in evidence, not as an obligation upon which the suit could be maintained, but merely as corroboratory of the amount of purchase money in arrears, at the time of its date, which was the day of the delivery of the deed, and the day upon which the alleged promise was made: Fidelity Ins. & Trust Co. *v.* Miller, 8 Norris, 26. And the articles of agreement, although the contract evidenced thereby was in the law merged in the executed conveyance, with the receipts thereon indorsed, were properly receivable in evidence, not as the cause of action upon which any recovery could be had, but for the same purpose as the mortgage, as showing the amount of the purchase money, and the several payments thereon. Of course if no personal

[Shaffer *v.* Haish.]

obligation or liability of Tonkin is otherwise shown, these matters of evidence can be of no avail.

The summons is in debt; that this is a proper form of action cannot be doubted. A debt, technically so called, may be evidenced by record, by contract under seal, or by simple contract only; its distinguishing feature is, that it is for a sum certain or that may readily be reduced to a certainty, and the action of debt lies for the recovery thereof, *eo nomine*, without regard to the manner in which the obligation is incurred, or is evidenced. The plea is *nil debet*, which is the general issue, when the action is on a simple contract. It is said that there is a variance between the writ and the declaration; if this be so, it was too late after the defendant had pleaded in bar of the action, to avail himself of the defect. A variance of this kind is either matter of abatement, or special demurrer, and only in that form can it be assigned for error here: Latimer *v.* Hodgdon, 5 S. & R., 514; Newlin *v.* Palmer, 11 S. & R., 98; Springer *v.* Comm'th, 3 P. & W., 28; Slocum *v.* Slocum, 8 Watts, 367; Gilbert *v.* Henck, 30 Penn. St., 205.

The several assignments of error are therefore sustained.

> The judgment is reversed and a *venire facias de novo* awarded.