## Hartje's Estate.

Argued October 1, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Charles J. Biddle*, with him *Albert M. Hoyt, Jr.* and *Moorhead & Knox*, for appellant.

*H. F. Stambaugh*, for appellee.

*Albert C. Hirsch*, with him *Cresswell S. Shumaker*, of *Hirsch, Shumaker & Bash*, for Trustee, appellee.

*Charles C. Arensberg*, Guardian Ad Litem, appellee.

OPINION BY MR. JUSTICE PATTERSON, November 23, 1942:

This appeal is from a decree of the Orphans' Court of Allegheny County disallowing a claim for payment of the amount due on a mortgage bond executed by a trustee out of the assets of the trust other than the mortgaged premises.

On March 7, 1910, Augustus Hartje entered into a separation agreement with his wife, Mary Scott Hartje (now Mary Scott Hartje Howard), obligating himself to pay her the sum of $6,000 annually during her life, and at her death to pay $100,000 to their two children. On the same date a tri-parte agreement was executed by Hartje, his wife, and Commonwealth Trust Company of Pittsburgh, under which Hartje transferred to the trust company 1,000 shares of Hartje Paper Company stock and his interest in five pieces of downtown Pittsburgh real estate, to be held by it "as security for the performance" of the separation agreement. One of the properties so transferred was a building located at Second and Wood Streets, Pittsburgh, known as the Hartje Building, owned one-half by Hartje and one-half by his brother, Richard Hartje, subject to a mortgage given by Hartje and the brother to secure their bond in the sum of $104,000. The tripartite agreement provided, inter alia, that: "In the event that the payment of any

or all of the mortgages secured by the properties described and embraced in the said deed of trust be, at maturity, or thereafter, required by the mortgagee to be paid, then the second party hereto [Commonwealth Trust Company] is empowered and authorized to join with the other owners of the said described properties, or either of them, and negotiate and execute a mortgage on said properties in like sum or sums as then exists upon said properties, and to so continue until said mortgages are fully paid." Other provisions reserved to Hartje the right to sell any of the property transferred to the trust company, with its consent, depositing the proceeds of sale in place of the property sold, or to withdraw all of the property upon substituting therefor $150,000 in cash, and in the absence of default under the separation agreement he was entitled to remain in possession of the real estate and to vote the stock and receive the dividends as before. Under the agreement the trust company had no duties of active management until after a default or a sale.

On November 4, 1912, the due date of the mortgage on the Second and Wood Streets property, Commonwealth Trust Company joined with Augustus Hartje and the heirs of Richard Hartje in executing a new mortgage on the property to the Philadelphia Saving Fund Society, in the amount of $100,000, and the old mortgage was satisfied of record. The new mortgage was accompanied by a bond, in the usual form, signed by all the mortgagors, including Commonwealth Trust Company. Each of these documents indicated on its face, however, that the trust company was acting as "Trustee under Agreement and Deed from Augustus Hartje dated March 7, 1910, and July 1st, 1910, respectively." This mortgage was extended from time to time, the last extension expiring November 4, 1931, and since 1934 the property has been in the hands of the Saving Fund Society as mortgagee in possession. Until his death, in 1922, Hartje made the payments to his wife,

as required by the separation agreement, and from then to 1926 payments were made by his estate. Thereafter the payments were made by Commonwealth Trust Company, out of the assets remaining in its possession as trustee under the tripartite agreement, until the filing of its third account, on January 6, 1941.

At the audit of the account, showing a balance on hand of $71,545.29, the Saving Fund Society presented a claim for the face amount of the bond accompanying the mortgage and interest. It was conceded the fund for distribution consists solely of invested proceeds realized upon a sale of the Hartje Paper Company stock. All the real estate is heavily mortgaged, the mortgagees have taken possession, and it is admitted there is no equity in any of it for the trust. The auditing judge disallowed the claim on the bond and the Saving Fund Society filed exceptions. These were all dismissed by the court en banc and a final decree was entered from which the Society appeals.

The Society was fully aware of the fact that Commonwealth Trust Company was acting in a fiduciary capacity, since, as above stated, both the bond and mortgage contained recitals to that effect. This was notice to it of the trust and of the power under which these documents were executed. "Those who deal with trustees are presumed to do so with notice of the legal limitation of their power; and when they go outside of this, they do so at their own risk. Absolute owners may do as they please with their property so long as they do not infringe the laws of public policy, but trustees, whether bankers, attorneys, guardians, or others, act in a representative character, and they are limited by the purpose of the trust which each holds": *Hinds's Estate*, 183 Pa. 260, 265. See also *Kenworthy v. Equitable Trust Co.*, 218 Pa. 286, 290; *Moore v. Trainer*, 252 Pa. 367, 370; *Clark v. Provident Trust Co.*, 329 Pa. 421, 426. Thus, as the Society states: "The only question before the Court is whether the Trustee had authority to give to the appellant an unrestricted mortgage bond binding

all of the trust assets." We concur in the view of the court below that the trust agreement did not confer such authority upon the trustee, and agree with it that the claim of appellant cannot be allowed.

As stated in Restatement of Trusts, section 186: ". . . the trustee can properly exercise such powers and only such powers as (a) are conferred upon him in specific words by the terms of the trust, or (b) are necessary or appropriate to carry out the purposes of the trust and are not forbidden by the terms of the trust." Here the trustee was expressly empowered to join in the execution of a renewal mortgage, and it is urged this necessarily included also authority to execute the bond. Such position is wholly untenable. "A mortgage may be created as well without as with an accompanying personal obligation of the mortgagor to pay the debt secured, or attempted to be secured, thereby. In the one case the property alone is charged with the lien—is looked to solely by the mortgagee out of which to make his lien; in the other, he has the additional security of the personal obligation of the mortgagor. A debt chargeable only against certain property is, in effect, simply a debt with limited means of satisfaction or enforcement; the value of the property charged with the indebtedness is the measure of the security afforded": *Pioneer Gold Mining Co. v. Baker,* 23 Fed. 258, 268. See also *Cook v. Johnson,* 165 Mass. 245, 43 N. E. 96, 97; *Weikel v. Davis,* 109 Wash. 97, 186 P. 323, 324; *Ballou v. Young,* 42 S. C. 170, 20 S. E. 84, 86; 1 Jones, Mortgages, (8th ed.), section 436; 36 Am. Jur., Mortgages, section 59. Clearly no express power or authority to join in execution of the bond is given, and we think it equally clear that none was given or intended to be given by implication.

This is not the usual case of a power to mortgage property to secure an indebtedness properly incurred in the administration of the trust estate. The power here conferred was not to mortgage to borrow money for the purposes of the trust, but a power merely to "join with the other owners" in giving a renewal mort-

gage "at maturity" of the old, and then only "in like sum or sums as then exists", until the indebtedness secured upon the property prior to inception of the trust had been paid in full. In view of the fact that the trust company held legal title to Hartje's fractional interest it was necessary that there be some evidence of its right to join in the renewal mortgage, lest his equity in the property as well as that of his co-owners be jeopardized by its inability to do so, and we think the restrictive language of the power indicates this was intended as its sole purpose and effect. Moreover, it must not be lost sight of that the whole purpose of the arrangement was to provide security for the protection of the rights of the wife and children of Hartje under the separation agreement—a purpose which would be defeated were we to conclude, as appellant urges, that power to give the unrestricted bond may be implied. Surely the wife, who was also a party to the agreement, could not have intended that any such power be conferred upon the trustee, and to say that Hartje so intended would be to convict him of something closely akin to fraud. Plainly the giving of the unrestricted bond was neither "necessary" nor "appropriate" to the carrying out of the purposes of the trust; hence, the existence of a power to do so by inference must be denied: Restatement of Trusts, section 186, supra.

Since, as we conclude, Commonwealth Trust Company lacked the authority, express or implied, to execute the bond, it follows that its so doing cannot bind the assets committed to its care, other than the mortgaged premises. Undisputed evidence, documentary and otherwise, makes it apparent that appellant at all times entertained a similar view of the matter, regarding the joinder of the trust company in execution of the bond as a mere technical formality. Its attempt to bind the trust assets generally, by assertion of a claim upon the bond at the audit of the trustee's third account, was obviously an afterthought.

Decree affirmed. Costs to be paid by appellant.