J-A29020-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION F/K/A/THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR RASC 2002KS6 | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EDELLA JOHNSON, A/K/A  EDELLA ROBINSON, A/K/A EDELLA ROBINSON JOHNSON; ERIC R. JOHNSON, A/K/A ERIC JOHNSON | |
| Appellants | No. 302 WDA 2016 |

Appeal from the Judgment Entered February 10, 2016
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): MG-09-000736

BEFORE:  DUBOW, J., MOULTON, J., and MUSMANNO, J.

MEMORANDUM BY MOULTON, J.:                **FILED MAY 26, 2017**

Edella Johnson, a/k/a Edella Robinson, a/k/a Edella Robinson Johnson
and Eric R. Johnson, a/k/a Eric Johnson (collectively, "the Johnsons") appeal
from the February 10, 2016 judgment entered in favor of the Bank of New
York Mellon Trust Company, National Association f/k/a/the Bank of New York
Trust Company, N.A. as successor to JPMorgan Chase Bank, N.A., as trustee
for RASC 2002KS6 ("BNY Mellon") in the Allegheny County Court of Common
Pleas following a non-jury trial.  We affirm.

The trial court summarized the relevant factual and procedural history of this matter as follows:

> On May 23, 2002, [the Johnsons] entered into a Mortgage Contract with EquiFirst Corporation. The Mortgage was assigned to JPMorgan Chase Bank as Trustee of Residential Funding Corporation on or about March 17, 2003. The land subject to the Mortgage is located at 636 Collins Avenue, Pittsburgh, PA 15206. The Johnsons defaulted under the Mortgage by failing to make payments due. On March 31, 2009, BNY Mellon filed the instant in rem mortgage foreclosure action against the Johnsons. The Johnsons filed an Answer with New Matter and then [BNY Mellon] filed a Motion for Summary Judgment. The Johnsons filed a response and Judge Timothy Patrick O'Reilly denied [BNY Mellon's] Motion for Summary Judgment. After a non-jury trial on September 22, 2015, this Court found in favor of [BNY Mellon] and against the Johnsons in the amount of $116,788.28. The Johnsons filed a Motion for Post-Trial Relief requesting that this Court vacate its verdict and dismiss the action without prejudice. That Motion was denied and then the Johnsons filed the instant Appeal.

Opinion, 4/7/16, at 1-2 ("1925(a) Op.").

The Johnsons raise the following issues on appeal:

> 1) Did the lower court err in entering a judgment based on unauthenticated business records?
>
> 2) Did the lower court err in entering a judgment against the Johnsons although they had not been mailed a true Act 91 Notice and [BNY Mellon's] trial testimony was less than candid?
>
> 3) Did the lower court err in entering a judgment against a married person, [Edella] Johnson, not obligated under the Note?
>
> 4) Did the lower court err in entering a judgment where the mortgage assignments contained a fatal gap?

5) Did the lo[w]er court err in entering a judgment although BNY Mellon failed to join an indispensable party?

Johnsons' Br. at 1-2.

First, the Johnsons contend that the trial court erred in relying on unauthenticated business records. Specifically, the Johnsons argue that Loretta Poch, an analyst with their current mortgage servicer, Specialized Loan Servicing ("SLS"), could not properly authenticate the business records of the prior mortgage servicers.[1]

It is well-settled that

> [q]uestions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision absent a clear abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

***Keystone Dedicated Logistics, LLC v. JGB Enter., Inc.***, 77 A.3d 1, 11 (Pa.Super. 2013) (internal citations and quotations omitted). This Court has previously discussed the admission of business records pursuant to the Pennsylvania Rules of Evidence as follows:

---

[1] At trial, the trial court first admitted the records for the limited purpose of showing the principal balance due and that the Johnsons were in default. N.T., 9/22/15, at 25. With that qualification, the Johnsons withdrew their objection to the admission of the records. ***Id.*** The court went on to explain that the documents were also admissible to show the interest due and owing. ***Id.*** at 26. Later, when BNY Mellon inquired whether the loan payment history was introduced for a limited purpose, the trial court replied, "No, it is in evidence." ***Id.*** at 32. The Johnsons did not renew their objection to the admission of the records.

"Hearsay" is an out of court statement offered in court for the truth of the matter asserted. Pa.R.E. 801(c). A writing constitutes a "statement" as defined by Rule 801(a). *See* Pa.R.E. 801(a). Subject to certain exceptions, hearsay is inadmissible at trial. Pa.R.E. 802. One such exception is contained in Rule 803(6), which permits the admission of a recorded act, event or condition if:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) **neither the source of information nor other circumstances indicate a lack of trustworthiness.**

Pa.R.E. 803(6) (emphasis added). Furthermore, the Uniform Business Records as Evidence Act states:

> A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

> 42 Pa.C.S.A. § 6108(b). "As long as the authenticating witness can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness for the business records of a company, a sufficient basis is provided to offset the hearsay character of the evidence." **Boyle v. Steiman**, 429 Pa.Super. 1, 631 A.2d 1025, 1032–33 (1993) (internal citations omitted), *appeal denied,* 538 Pa. 663, 649 A.2d 666 (1994).

**U.S. Bank, N.A. v. Pautenis**, 118 A.3d 386, 401 (Pa.Super. 2015).

The Johnsons rely in part on **Pautentis**, in which this Court considered whether the business records exception to hearsay applied to loan history documents. The trial court in **Pautentis** found that the witness testifying on behalf of the homeowner's current mortgage servicer could not authenticate the documents or establish their trustworthiness. **Id.** at 401. The court reasoned that: (1) the witness explained his company's process for validating and adopting the prior loan servicer's records, but had no knowledge as to how the prior servicer created or maintained its records; (2) the records of payment activity provided at trial dated back only to February 1, 2008, which was more than a year after the loan originated; (3) the document presented indicated the principal loan amount was over $6,000 more than at the time of the loan's inception, the witness could not explain this difference, and the homeowner testified she had been making payments prior to her default, which would have decreased the loan principal amount; (4) the witness admitted that he did not review the qualified written request sent by the homeowner's attorney to her mortgagee to obtain information

about the mortgage; and (5) the loan servicer did not investigate the accuracy of the amount purportedly due, other than reviewing the incomplete payment history information received from the prior servicer. *Id.* at 400-02. We concluded that the trial court did not abuse its discretion in finding the bank "failed to present complete, accurate and trustworthy records evincing the actual amount due and owing from [Home Owner] on this loan obligation." *Id.* at 402 (quotation omitted) (alteration in original). We affirmed the trial court's exclusion of the loan history documents presented as proof of the amount owed by the homeowner on the loan. *Id.*

In contrast, here we are reviewing the trial court's decision to admit the business records. Further, BNY Mellon's witness Poch testified that: the loan payment history was complete and "record[ed] all financial transactions related to this loan from June 27[], 2002 and ending [July 31, 2014]"; the Johnsons did not contend the prior servicers' payment history failed to include all prior payments made; based on her review of the records the prior servicers' records were "in compliance with the industry standards for keeping financial records on mortgage loans"; and the records contained "no unusual entries." N.T., 9/22/15, at 20, 41. We conclude that the trial court did not abuse its discretion in admitting the records in question.

The Johnsons next claim that the trial court erred "in entering a judgment against the Johnsons although they had not been mailed a true Act 91 Notice and Plaintiff's trial testimony was less than candid." Johnsons'

Br. at 2. The Johnsons contend that they received a defective notice because the "mandated list of credit counseling agencies was not attached." *Id.* at 8. According to the Johnsons, while the Act 91 notice stated that a list of such agencies was attached, no such list was in fact included with the notice.[2]

This Court has explained:

> Act 91 requires a mortgagee who desires to foreclose to send notice to the mortgagor "advis[ing] the mortgagor of his delinquency ... and that such mortgagor has thirty (30) days to have a face-to-face meeting with the mortgagee who sent the notice or a consumer credit counseling agency to attempt to resolve the delinquency . . . by restructuring the loan payment schedule or otherwise." ***Beneficial Consumer Disc. Co. v. Vukman***, 621 Pa. 192, 77 A.3d 547, 550 (2013) (quoting 35 P.S. § 1680.403c(a)-(b)(1) (emphasis added), *amended by* P.L. 841, No. 60, § 2 (July 8, 2008)). "[T]he purpose of an Act 91 notice is to instruct the mortgagor of different means he may use to resolve his arrearages in order to avoid foreclosure on his property and also gives him a timetable in which such means must be accomplished." [***Wells Fargo Bank, N.A. ex rel. Certificate Holders of Asset Backed Pass-through Certificates Series 2004-MCWI v. Monroe***], 966 A.2d [1140,] 1142 (Pa.Super.2009)

_____

[2] The notices admitted into evidence did contain an attached list of credit counseling agencies. The trial court noted that the list was dated February 23, 2009, while the notices were dated February 3, 2009. N.T., 9/22/15, at 30-31. The trial court nonetheless overruled the Johnsons' objection to admission of the notices, leaving the meaning of the notices open to cross-examination.

BNY Mellon, at trial and on appeal, maintains that the notices did include the list of credit counseling agencies.

(quoting [***Fish v. Pennsylvania Housing Fin. Agency***, 931 A.2d 764], 767 [(Pa.Cmwlth. 2007)] (citing 35 P.S. § 1680.403c)).

***Wells Fargo Bank N.A. v. Spivak***, 104 A.3d 7, 15 (Pa.Super. 2014). Act 91 also requires that the notice include "the telephone number and the address of a local consumer credit counseling agency." 35 P.S. § 1680.403c(b)(1).

Under Pennsylvania law, a homeowner is not entitled to relief unless he or she was prejudiced by the failure to comply with Act 91.

> If there has been a failure to comply with the notice requirements of [Act 91], and such failure has been properly raised in a legal action, including an action in foreclosure . . ., the court may dismiss the action without prejudice, order the service of a corrected notice during the action, impose a stay on any action or impose other appropriate remedies in the action to address the interests, if any, of the mortgagor **who has been prejudiced thereby**.

35 P.S. § 1681.5(1) (emphasis added).[3] This Court has concluded that prejudice cannot be presumed and a homeowner must show actual prejudice. ***Monroe***, 966 A.2d at 1143.

The Johnsons argue that the mortgagee's failure to include a list of credit counseling agencies prevented them from meeting with a credit

---

[3] Although the General Assembly enacted 35 P.S. § 1681.5(1) in 2012, it is applicable retroactively to June 5, 1999.

counseling agency prior to the acceleration of the mortgage.[4]  The trial court, however, concluded that they failed to offer evidence to support that claim.  1925(a) Op. at 2.  That conclusion is supported by the record.  The Johnsons aver that

> [t]he failure to send the required Act 91 notice before the loan is accelerated and a foreclosure complaint is filed causes prejudice to the homeowner.  First, the homeowner is deprived of their state-provided opportunity to cure their pre-foreclosure commencement deficiency with financial assistance.  In addition, it also provides the homeowner assistance from the Pennsylvania Housing Finance Agency loans [sic] free of charge.  After the loan is accelerated and a foreclosure complaint is filed the homeowner incurs additional and substantial loss.

Johnsons' Sub. Rep. Br. at 6.  Here, however, Act 91 notice was sent, and the issue is whether the alleged failure to include the list of credit counseling agencies prejudiced the Johnsons.  The Johnsons do not explain how the absence of the list prevented the Johnsons from meeting with a credit counseling agency pre-acceleration.  Accordingly, the Johnsons have failed to meet their burden to show that they were actually prejudiced by the defective notice.

---

[4] The trial court opined that "[t]he testimony established that the Johnsons met with housing counselors which remedied any alleged prejudice." *Id.* Edella Johnson testified that she and her husband met with several credit counseling agencies.  N.T., 9/22/15, at 58. The Johnsons' counsel later stated to the court that these meetings occurred after the acceleration of the mortgage. *Id.* at 73.

The Johnsons next claim that the trial court erred in entering judgment against Edella Johnson because she did not sign the note accompanying the mortgage. We disagree.

In Pennsylvania, a mortgagee may foreclose on property so long as both spouses who own the property sign the mortgage. We find persuasive the bankruptcy court's analysis of Pennsylvania law in *In re Farris*, 194 B.R. 931 (Bankr. E.D. Pa. 1996). As that court explained, "having [Debtor's] signature on the Mortgage gave the bank the right to proceed against the Residence. . . . [U]nder Pennsylvania state law, a valid mortgage can be created without requiring the mortgagor to assume personal liability under a note." *Id.* at 939, 940; *cf. Easton Theatres, Inc. v. Wells Fargo Land and Mortgage Co., Inc.,* 449 A.2d 1372, 1375 (1982) (quoting *In re Hartje's Estate*, 28 A.2d 908, 910 (Pa. 1942)) ("It is well settled in Pennsylvania that a mortgage may be executed without personal liability: 'A mortgage may be created as well without as with an accompanying personal obligation of the mortgagor to pay the debt secured, or attempted to be secured, thereby.'"). In other words, a mortgagee may foreclose without obtaining both spouses' signatures on the note accompanying the mortgage.

Here, it is undisputed that while Edella Johnson did not sign the note, she did sign the mortgage. **See** Mortgage at 1, 15. Therefore, the trial court did not err in entering judgment against Edella Johnson.[5]

The Johnsons next argue that that the mortgage assignments contain a fatal gap because the June 5, 2009 assignment did not name the trust beneficiary on whose behalf the assignee trust was acting. The Johnsons contend that a "trustee who fails to identify the beneficiary for whom it intends to act is a legal nullity." Johnsons' Br. at 9.

Whatever the merits of this claim, the Johnsons lack standing to raise it. This Court has previously stated:

> The court [in **In re Walker**, 466 B.R. 271, 285 (Bankr.E.D.Pa.2012), found] that the debtor lacked standing to question the validity of the assignment(s) of the note:
>
> > [The threshold inquiry in analyzing a party's standing is to evaluate whether the party can demonstrate that the party has suffered or will suffer "injury in fact."]. If a borrower cannot demonstrate potential injury from the enforcement of the note and mortgage by a

---

[5] The Johnsons' reliance on **Klebach v. Mellon Bank, N.A.**, 565 A.2d 448 (Pa.Super. 1989) is misplaced. In that case, this Court held that a judgment creditor could not execute a lien on property held by a husband and wife as tenants by the entirety to satisfy a judgment against the husband as the sole debtor. **Id.** at 450. Here, in contrast, the issue is whether, in a mortgage foreclosure action, the mortgagee may foreclose on property where both spouses are parties to the mortgage, but only one spouse is obligated under the note accompanying the mortgage.

- 11 -

party acting under a defective assignment, the borrower lacks standing to raise the issue.

*JP Morgan Chase Bank, N.A. v. Murray*, 63 A.3d 1258, 1264–65 (Pa.Super. 2013) (quoting *Walker*, 466 B.R. at 285). Furthermore,

a note secured by a mortgage is a negotiable instrument, as that term is defined by the [Pennsylvania Uniform Commercial Code], and . . . "[p]ursuant to the PUCC, a debtor who satisfies his obligations under a negotiable instrument cannot be required to do so again, even if the recipient of the debtor's performance is not the holder of the note in question."

*Gerber v. Piergrossi*, 142 A.3d 854, 862 (Pa.Super. 2016) (quoting *Murray*, 63 A.3d at 1263), *app. denied*, 142 A.3d 854 (Pa. 2017). Accordingly, "a borrower is not in peril of double liability or injury by an allegedly defective assignment, for if the assignment to the foreclosing party had been defective, the borrower would not have to pay on the note to another party." *Id.* Because the Johnsons have not demonstrated potential injury from the enforcement of the note and mortgage even if the assignment was defective, the Johnsons lack standing to challenge the validity of the assignment.

The Johnsons' final contention is that BNY Mellon failed to join the trust beneficiary as an indispensable party. "Under Pennsylvania law, the failure to join an indispensable party implicates the trial court's subject matter jurisdiction. Failure to join an indispensable party goes absolutely to the court's jurisdiction and the issue should be raised *sua sponte*." *Orman*

***v. Mortg. I.T.***, 118 A.3d 403, 406 (Pa.Super. 2015) (internal citation and quotation omitted).

At the outset, we note that the Johnsons misstate Pennsylvania law when they contend that an indispensable party is merely "another who may have an interest involving money or property," Johnsons' Br. at 12. We have explained that

> [a] party is indispensable when his or her rights are so connected with the claims of the litigants that no decree can be made without impairing those rights. If no redress is sought against a party, and its rights would not be prejudiced by any decision in the case, it is not indispensable with respect to the litigation. We have consistently held that a trial court must weigh the following considerations in determining if a party is indispensable to a particular litigation.
>
> > 1. Do absent parties have a right or an interest related to the claim?
> >
> > 2. If so, what is the nature of that right or interest?
> >
> > 3. Is that right or interest essential to the merits of the issue?
> >
> > 4. Can justice be afforded without violating the due process rights of absent parties?
>
> In determining whether a party is indispensable, the basic inquiry remains whether justice can be done in the absence of a third party.

***Orman***, 118 A.3d at 406–07 (internal citations and quotations omitted).

Here, the Johnsons failed to identify the alleged trust beneficiary or how that party's rights or interests are essential to the claim. Moreover, even if there was an unidentified beneficiary with an interest in this action,

the Johnsons have failed to demonstrate that said beneficiary would be prejudiced by the decision in this matter.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/26/2017